**Garner CHILDRESS, on behalf of Patrick Childress, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

**No. 80–1489.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 16, 1981.

Decided May 28, 1982.

Flossie Weill, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for plaintiff-appellant.

John H. Cary, U. S. Atty., Byron R. Trauger, Asst. U. S. Atty., Chattanooga, Tenn., Holly Grimes, Washington, D. C., for defendant-appellee.

Before BROWN and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

**1.** 42 U.S.C. § 416(h)(2)(A) provides as follows:

(2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this title, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

**2.** 42 U.S.C. § 416(h)(3)(C)(ii) provides:

(3) An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2), shall nevertheless be deemed to be the child of such insured individual if:

. . . . .

(C)(ii) such insured individual is shown by evidence satisfactory to the Secretary to be the father of the applicant and was living with or contributing to the support of the applicant at the time such insured individual became entitled to benefits or attained age 65, whichever first occurred . . . .

**3.** 42 U.S.C. §§ 402(d)(1) and 402(d)(3) provide in part as follows:

(d) Child's insurance benefits. (1) Every child (as defined in section 216(e) [42 U.S.C. § 416(e)]) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

PHILLIPS, Senior Circuit Judge.

This action involves a claim for social security benefits on behalf of the illegitimate son of a deceased fully insured wage earner. Patrick Childress, the claimant, maintains that he is a "child" of the wage earner within the meaning of 42 U.S.C. § 416(h)(2)(A)[1] or § 416(h)(3)(C)(ii),[2] and, therefore, is entitled to benefits under 42 U.S.C. § 402(d)(1) and § 402(d)(3).[3]

The claimant's mother, Ms. Garner Childress, filed an application for child's insurance benefits with the Social Security Administration in October 1975. The claim was denied on March 11, 1976. She requested reconsideration and the claim again was denied on December 21, 1976. She did

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 223(d) [42 U.S.C. § 423(d)]) which began before he attained the age of 22, and

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed,

(ii) if such individual has died, at the time of such death, or

(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,

shall be entitled to a child's insurance benefit
. . . .

\* \* \* \* \* \*

(3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) unless, at such time, such individual was not living with or contributing to the support of such child and—

(A) such child is neither the legitimate nor adopted child of such individual, or

(B) such child had been adopted by some other individual.

For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 216(h)(2)(B) or section 216(h)(3) [42 U.S.C. § 416(h)(2)(B) & § 416(h)(3)] shall be deemed to be the legitimate child of such individual.

not request a hearing at that time.[4] In 1977 the mother of claimant again filed for insurance benefits. This application and request for reconsideration were denied. In June 1978 she requested a hearing before an administrative law judge. A hearing was held in September 1978, and the administrative law judge rendered his opinion in January 1979, finding that the claimant was the biological son of the deceased wage earner but that he was not entitled to benefits because there had been no satisfactory showing that the wage earner had made regular and substantial contributions to the claimant's support, according to the Social Security Administration's interpretation of 42 U.S.C. § 416(h)(3)(C)(ii). On February 27, 1979, the Appeals Council refused to review the decision.

The district court affirmed the decision of the Secretary in January 1980. The claimant's motion to alter or amend the judgment was denied by the district court in May 1980. A timely appeal was filed in June 1980.

The district court did not have the benefit of the decision of this court in *Boyland v. Califano*, 633 F.2d 430 (6th Cir. 1980), rendered May 29, 1980. The *Boyland* rule was reaffirmed in *Parker v. Schweiker*, 673 F.2d 160 (6th Cir. 1982). Because we find that *Boyland* and *Parker* control the outcome in this case we reverse and remand with instructions that the payments be made to the claimant.

I

It is undisputed that Patrick Childress ("the claimant") is the biological son of the deceased wage earner, Gary Rounsaville, and that Patrick is the illegitimate son of Gary Rounsaville and Garner Childress. Patrick was born in July 1967, when both parents were teenagers, living with their parents in the same apartment building in Chattanooga, Tennessee. In May 1969 the wage earner, Gary Rounsaville, married Lillie Elaine Reese. A legitimate child was born to them in June 1969. The wage earner graduated from high school in the month when the legitimate child was born. Shortly thereafter the wage earner moved to Atlanta, Georgia, with his wife and legitimate son. The claimant Patrick and his mother continued to live in Chattanooga with Patrick's maternal grandparents.

After he moved to Atlanta, Rounsaville frequently returned to Chattanooga to visit Patrick and Ms. Childress.

The record establishes that the deceased wage earner also contributed money to Patrick's support. The claimant, his mother and grandmother, and several of the wage earner's family members all testified or submitted statements to the effect that the wage earner contributed $15–$20 every month. The ALJ did not credit any of this evidence.

The ALJ concluded that "the claimant in this case has not shown by satisfactory evidence that the claimant was receiving regular and substantial contributions from the wage earner." He supported his conclusion by noting that there was no documentation of the contributions, no indication of them on Garner Childress's applications before the Tennessee Department of Human Services for Aid to Families with Dependent Children, and an inconsistency with the first application of the claimant regarding the amounts of the contributions.

In applying the "regular and substantial contributions" standard, the ALJ followed Social Security Ruling 77–31 (Cumulative Bulletin, 1977, p. 19), and rejected the argument of claimant, based on *Santiago v. Mathews*, 431 F.Supp. 1213 (E.D.N.Y.1977), that "support need not be regular and sub-

---

4. Counsel for the appellant states in her brief that the appellant was without the benefit of counsel before 1977. This is sharply contradicted by evidence in the record. A copy of the first denial of appellant's request for reconsideration, dated 12–21–76, refers specifically to a lawyer representing the applicant. The opinion of the Social Security Administration indicates that a carbon copy was sent to a lawyer at the same address as appellant's present counsel. In addition, counsel in the present case, at the hearing before the ALJ, referred specifically by name to the applicant's prior counsel, and questioned the applicant about the lawyer's representation of her on her first application.

stantial." The Appeals Council denied review and affirmed the application of the ALJ of the "regular and substantial" test, stating that "[t]he administrative law judge is not bound by a court decision in another jurisdiction and correctly followed the Social Security Ruling." This decision became the final decision of the Secretary, subject to review by the courts.[5]

In affirming the decision of the Secretary, the district court approved the use by the ALJ of the regular and substantial test and found that the conclusion of the ALJ under that test was supported by substantial evidence.

## II

The Social Security Act ("the Act") allows insurance benefits for the illegitimate children as well as the legitimate children of a fully insured deceased wage earner. *See* 42 U.S.C. §§ 402(d)(1), 416(e), 402(d)(3) and 416(h). In order to qualify for support, however, a child must have been "dependent" on the wage earner at the time of his death. 42 U.S.C. § 402(d)(1)(C). *Legitimate* children are "deemed dependent" under the Act. 42 U.S.C. § 402(d)(3). According to the same code section, an *illegitimate* child will be deemed "legitimate", and thus "deemed dependent", if he can show he is a "child" of the wage earner within the meaning of 42 U.S.C. § 416(h)(2)(B) or § 416(h)(3). An applicant for benefits will also be deemed a "child" of the wage earner if he could inherit personal property from the wage earner under the intestacy laws of the state of the wage earner's domicile at the time of his death. 42 U.S.C. § 416(h)(2)(A). An applicant who is a "child" under this section will also be deemed "legitimate" under § 402(d)(3) of the Act and thus will enjoy the presumption of dependency. *Mathews v. Lucas*, 427 U.S. 495, 498–99 & nn. 1 & 2, 514–15 & n. 17, 96 S.Ct. 2755, 2758–59 & nn. 1 & 2, 2766–67 & n.17, 49 L.Ed.2d 651 (1976). *Jimenez v. Weinberger*, 417 U.S. 628, 631 n. 2, 94 S.Ct. 2496, 2499 n. 2, 41 L.Ed.2d 363 (1974).[6]

---

5. *See* 20 C.F.R. § 404.981; 42 U.S.C. § 405(g).

6. This conclusion does not inevitably follow from the language of the statute. Section 402(d)(3) applies the presumption of dependency to those who fall within the definition of "child" in § 416(h)(2)(B) or § 416(h)(3), by deeming them to be legitimate. But § 402(d)(3) conspicuously omits a reference to § 416(h)(2)(A). This latter section looks to state intestacy law to determine whether an applicant is a child, but not whether the child is "legitimate" under § 402(d)(3). But the Supreme Court, in a footnote in *Mathews v. Lucas, supra,* rejected an apparent argument by the Secretary that a "child" under § 416(h)(2)(A) was not necessarily entitled to the presumption of dependency. The Court stated:

> The Secretary, pointing out that § 202(d)(3), as set forth in 42 U.S.C. § 402(d)(3), in specific terms provides only that "a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) ... shall be deemed to be the legitimate child of such individual," urges that we misconstrued the statute in *Jimenez,* 417 U.S., at 631 n.2 [94 S.Ct., at 2499 n.2], in concluding that an applicant qualifying as a child under § 216(h)(2)(A) is to be considered as a *legitimate* child and therefore dependent under § 202(d)(3). We have no question, however, as to the correctness of that conclusion.

> First, it is only through operation of § 216(h)(2)(A) that the recognition of "legitimacy" by state law under § 202(d)(3)(A) as giving rise to a presumption of dependency takes on a consistent operational meaning. Second, §§ 216(h)(2)(B) and (3) specifically exclude any child qualified under § 216(h)(2)(A); if a § 216(h)(2)(A) child were not considered legitimate under § 202(d)(3), this would have the anomalous effect that an illegitimate child who had been acknowledged in a written statement by the insured father, for example, would be deprived of otherwise established eligibility for benefits, see § 216(h)(3)(C)(i)(I), if under applicable state law such an acknowledgment worked to make the child an intestate heir. Moreover, the legislative history is clear that the Social Security Amendments of 1960, Pub.L. 86–778, 74 Stat. 924, §§ 208(b) and (d), 42 U.S.C. § 408(b) and (d), adding § 216(h)(2)(B) to the Act and inserting the provision in § 202(d)(3) specifying that a § 216(h)(2)(B) child shall be deemed to be a legitimate, and therefore dependent, child for death benefit purposes, were intended to have the effect of deeming *any* § 216(h)(2) child "legitimate" and thus "dependent." See S.Rep. No. 1856, 86th Cong., 2d Sess., 78–79, 133 (1960) (discussing §§ 207(b) and (d)); H.R.Rep. No. 1799, 86th Cong., 2d Sess., 91–92, 152 (1960).

427 U.S. 495 at 514 n. 17, 96 S.Ct. 2755 at 2766 n. 17, 49 L.Ed.2d 651.

The claimant, Patrick Childress, has not been legitimated under the laws of either Georgia, the domicile of the wage earner, see Ga.Code §§ 74–101, 74–103, or Tennessee, the domicile and place of birth of the claimant, see T.C.A. §§ 36–302, 36–303 and 36–307. Nor has the claimant acquired the status of a "child" under 42 U.S.C. § 416(h)(2)(B) (marriage by parents that would be valid except for nonobvious legal impediments), or 42 U.S.C. § 416(h)(3)(C)(i) (written acknowledgment of paternity by father, court decree of paternity or court order of support). In order to qualify for the presumption of dependency, the claimant must show that he is a "child" within the meaning of either 42 U.S.C. § 416(h)(2)(A) or 42 U.S.C. § 416(h)(3)(C)(ii).

Even if a claimant does not qualify for the presumption of dependency, that claimant still may prove dependency. Section 416(h)(3)(C)(ii) essentially requires proof of dependency, by the provision that the applicant show that the wage earner was living with or contributing to the support of the claimant.

The claimant argues that he could inherit from the wage earner under the intestacy law of Georgia and that he is a child of the wage earner within the meaning of 42 U.S.C. § 416(h)(2)(A). Under the Georgia law in force at the time of the application of claimant for benefits, an illegitimate child could not inherit from his father. Ga. Code Ann. § 113–904 (1975).[7]

Citing *Eubanks v. Banks*, 34 Ga. 407 (1866), the appellant asserts that Georgia courts would look to the "personal law" of Tennessee to determine whether he was legitimate and that according to T.C.A. § 31–206(2)(b) and *Allen v. Harvey*, 568 S.W.2d 829, 833 (Tenn.1978), he is the legitimate son of the wage earner. These authorities, however, provide only that an illegitimate child may inherit from his father in Tennessee if "the paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof." T.C.A. § 31–206(2)(b). In *Allen v. Harvey*, the Supreme Court of Tennessee applied the "policy" of the above statute (which had been enacted in 1978) to an action accruing prior to its passage, to permit an illegitimate child to inherit through his intestate father, when the lower courts had found that the father-child relationship was clearly established. *See also Morrow v. Thompson*, 626 S.W.2d 706, 709–10 (Tenn.App.1981).

■ In *Allen v. Harvey, supra,* the court found that the fact that the child could take

7. Ga.Code Ann. § 113–904 provided:
> 113–904 (3029) Inheritance by and from bastards
> Bastards have no inheritable blood, except that given to them by express law. They may inherit from their mother, and from each other, children of the same mother, in the same manner as if legitimate. Legitimate and illegitimate children of the same mother shall inherit alike the estate of the mother. If a bastard dies leaving no issue or widow, his mother, brothers, and sisters shall inherit his estate equally. In distributions under this law the children of a deceased bastard shall represent the deceased parent.

This statute was amended in 1980 to the following:
> 113–904 (3029) Inheritance by illegitimates
> (a) Illegitimate children have no inheritable blood except that given to them by express law.
> (b) An illegitimate child may inherit in the same manner as if legitimate from and through his mother, from and through the other children of his mother, and from and through any other maternal kin whether collateral or lineal.
> (c) An illegitimate child may not inherit from or through his father or any paternal kin by reason of the paternal kinship unless during the lifetime of the father and after the conception of the child a court of competent jurisdiction has entered an order declaring the child to be legitimate under the authority of section 74–103 or such other authority as may be hereafter provided by law or a court of competent jurisdiction has otherwise entered a court order establishing the father of the illegitimate child. If such an order has been entered, an illegitimate child may inherit in the same manner as if legitimate from and through his father, from and through the other children of his father, and from and through any other paternal kin whether collateral or lineal.
> (d) In distributions under this law, the children of a deceased illegitimate child shall represent the deceased parent.

under the Tennessee intestacy laws did not make him "legitimate." The *Allen* court noted that the child had not been legitimated according to the applicable provisions of Tennessee law, but distinguished the issue of legitimation from the issue of whether the child could inherit. 568 S.W.2d at 833–34. *See also State ex rel. Smith v. Memphis Light, Gas & Water Division*, 602 S.W.2d 249, 251 (Tenn.App.1980) (term "legitimate" means "that the child is one born in wedlock or declared to be legitimate by process of law"). Even if Tennessee law were applied to determine the status of claimant, he would still be deemed "illegitimate", and not entitled to take under the Georgia intestacy laws. *See Squire v. Vazquez*, 52 Ga.App. 215, 183 S.E. 127 (1935) (law of domicile of decedent determines who shall inherit). The claimant, therefore, is not a "child" under 42 U.S.C. § 416(h)(2)(A).

The appellant next contends that the Georgia law is unconstitutional, if it is read so as to preclude illegitimate children from inheriting in intestacy. *Compare Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), with *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). The district court rejected this claim, relying on the reasoning of *Cox v. Harris*, 486 F.Supp. 219 (M.D.Ga.1980) *remanded without opinion on other grounds*, 640 F.2d 382 (5th Cir. 1981), which held the Georgia statute in question to be constitutional under *Lalli, supra*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). We do not find it necessary to reach this question, in light of our conclusion in Part III of this opinion that the claimant qualifies for benefits under § 416(h)(3)(C)(ii) of the Act.

### III

The appellant claims that the wage earner was "contributing to his support" within the meaning of 42 U.S.C. § 416(h)(3)(C)(ii), and this, together with the finding of the ALJ that he is the biological son of the wage earner entitles him to benefits as the "child" of the wage earner, under the provisions of that code section.

The finding of the administrative law judge that the claimant is the biological son of the wage earner is supported by substantial evidence in the record, including testimony and statements by the claimant, the mother of the claimant, the wage earner's widow and several of the relatives of the wage earner. As noted above, the ALJ, applying the Administration's "regular and substantial" test, found that the wage earner was not "contributing to the support" of the claimant within the meaning of the statute.

This court recently has considered the question of what standard governs the "support" requirement of the Act in *Boyland v. Califano, supra*, 633 F.2d 430 (6th Cir. 1980). *Boyland*, like the present action, involved a claim for survivor's benefits by an illegitimate child of a deceased wage earner. The Secretary had determined that the contributions of the wage earner did not satisfy either a "regular and substantial" test or a "regular and continuous" test, and the district court affirmed. This court reversed, reasoning that a standard of "continuously regular and substantial contributions is a just standard when the income of the wage earner is regular and substantial. But where the income of a wage earner lacks continuity and substantiality and contributions are nevertheless given, a different criterion should be applied." *Boyland, supra*, 633 F.2d at 434.

This court held that "where the resources of the wage earner are scarce and the contributions to his children important to them, the statutory requirement can be satisfied." *Id.* Applying this reasoning, we held that the statutory requirement of support was satisfied in the case of a wage earner with a minimum income, who, despite his poverty, made $5–$10 payments from time to time, gave his children gifts, clothing and lunch money and allowed them to stay at his home for weeks at a time.

The *Boyland* rule was reaffirmed in *Parker v. Schweiker, supra*, 673 F.2d 160 (6th Cir. 1982). This court again found that the support requirement "must be evaluated in light of the father and child's actual circumstances." Applying this rule, the court

found that the requirement was satisfied where the wage earner had made regular contributions until he became hospitalized and bedridden a year before his death.

The Social Security Administration has issued a ruling stating that it does not acquiesce in the *Boyland* decision. SS Ruling 81–1c. The Administration has also issued a new Regulation which incorporates the standard of "regular and substantial" payments.[8] *See* 20 C.F.R. § 404.366(a)(2). The new Regulation defines "contributions to support" in these terms:

> Contributions must be made regularly and must be large enough to meet an important part of your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. If the insured person only provides gifts or donations once in a while for special purposes, they will not be considered contributions for your support. Although the insured's contributions must be made on a regular basis, temporary interruptions caused by circumstances beyond the insured person's control such as illness or unemployment, will be disregarded unless during this interruption someone else takes over responsibility for supporting you on a permanent basis.

We adhere to our reasoning in *Boyland* and *Parker* that the levels of income of the father and of the child's family necessarily are factors in determining whether contributions meet the statutory requirement of support. *See Boyland, supra,* 633 F.2d at 434; *Jones v. Harris,* 629 F.2d 334 (4th Cir. 1980); *Santiago v. Mathews,* 431 F.Supp. 1213 (E.D.N.Y.1977); *Kasey v. Richardson,* 331 F.Supp. 580 (W.D.Va.1971), *aff'd on other grounds,* 462 F.2d 757 (4th Cir. 1972).

We need not decide whether this reasoning is inconsistent with the Social Security Administration's new Regulation which is not applicable to the present case.[9] An absolute standard of substantiality, however, could produce unjustifiably harsh results where a poor father has been contributing conscientiously to the support of his child but has not been able to afford payments large enough to satisfy a fixed standard of substantiality. Such a standard would exclude from the statute those poor children who need the support the most, and those poor parents who are making small payments but at a big personal sacrifice. This result would be contrary to the policy of the Act of offsetting the economic dislocation suffered by dependents on account of the death of the wage earner. *Mathews v. Lucas, supra,* 427 U.S. at 507, 96 S.Ct. at 2763; *Jimenez v. Weinberger, supra,* 417 U.S. at 634, 94 S.Ct. at 2500.

In the present case, the ALJ found that the payments by the wage earner did not satisfy the regular and substantial test. The record contains substantial evidence indicating the wage earner made contributions of $15–$20 nearly every month. Signed statements that the wage earner contributed these amounts and that he acknowledged his son were submitted by the mother of claimant, and by the mother, sister, brothers, step-father and aunt of the wage earner. The mother of claimant, the claimant himself (then eleven years old) and the wage earner's sister and uncle all testified at the hearing that the wage earner contributed regularly to the support of the child. Mrs. Elaine Rounsaville, the widow of the wage earner and the mother of his legitimate child, submitted a signed statement in which she said that she was aware that an award of benefits to the claimant might reduce the survivor's benefits she received on behalf of her own son, and yet that she could attest to the fact that the

---

8. The statute itself contains no requirement of "regular and substantial" contributions. It requires only that the insured must have been "living with or contributing to the support of the applicant." § 416(h)(3)(C)(ii).

9. Apart from the issue of whether the regulation could be applied to hearings concluded at the administrative level before the regulation took effect, we find that the payments made by Gary Rounsaville were "large enough to meet an important part of [Patrick Childress's] ordinary living costs." 20 C.F.R. § 404.366(a)(2); *see post* at 630.

wage earner acknowledged and made regular contributions to the support of his illegitimate son, the claimant Patrick Childress.

The ALJ disregarded this evidence, finding that the payments were not documented and that there was no indication that the mother of the claimant had reported them on her AFDC applications. He also referred to discrepancies in the amounts claimed in the claimant's two earlier applications for benefits before the Social Security Administration. The record before the court contains no indications of such discrepancies. The ALJ referred to Exhibits 23 and 24, but these documents in the administrative record[10] are blank social security forms bearing the signature of the applicant. Even assuming such discrepancies exist, however, this court finds the conclusion of the ALJ that these payments were not made is not supported by substantial evidence. The overwhelming weight of evidence, in particular the widow's statement against her own interest, provides ample support for the contention of the claimant that the wage earner made regular contributions in the amount of $15–$20 per month. This court concludes that the alleged discrepancies and omissions in Garner Childress's previous dealings with state and federal governmental agencies do not justify disregarding all the other evidence in support of her claim.

We also conclude that the $15–$20 per month payments satisfy the requirement of support under the statute and under *Boyland* and *Parker, supra.* The wage earner was poor, earning from as little as $600 to as much as $5,700 in the years in question, while supporting a wife and legitimate child. The claimant's mother worked at a lunch counter and supported three other children in addition to the claimant. Welfare payments to her on behalf of the claimant ranged from $27.00 to $37.57 per month. We are not prepared to say that the additional contributions of $15–$20 per month did not meet an important part of the costs of rearing the child.

*Boyland* and *Parker* are the law of this Circuit and control the present case. We remand to the district court with instructions to order payments of survivor's benefits to the claimant.

Reversed and remanded.

---

10. Copies of the administrative record required by 42 U.S.C. § 405(g) were filed with this court in lieu of an appendix by authority of Sixth Circuit Rule 11(e).