**Gloria YOUNG; Alicia Young; Nicholas Young, Plaintiffs-Appellants,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 84-3959.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1985.

Decided April 8, 1986.

Rehearing and Rehearing En Banc Denied June 4, 1986.

Paul Mancino, Jr. (argued), Cleveland, Ohio, for plaintiffs-appellants.

Randolph Baxter, Chief, Appellate Litigation Div., Cleveland, Ohio, Richard J. French, Mary Lee Pilla, Asst. U.S. Atty. (argued), for defendant-appellee.

Before KEITH, KRUPANSKY and MILBURN, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Gloria Young (Young) filed applications with the Social Security Administration in 1978 for mother's insurance benefits pursuant to 42 U.S.C. § 402(g)(1) and child's insurance benefits pursuant to 42 U.S.C. § 402(d)(1) on behalf of her children Nicholas and Alicia Young, minor appellants herein, claiming entitlement for all based upon the wage earner status of decedent, Eddie Ivey, Jr. (Ivey). The applications were denied initially and on reconsideration. The administrative law judge (ALJ), in October of 1981, determined after a hearing that none of the appellants were entitled to benefits. He concluded that appellant Young failed to support her allegation that a common law marriage had existed between her and Ivey under Ohio law and that minor appellants did not qualify as Ivey's "children" within the meaning of the Social Security Act. The Appeals Council declined to review the ALJ's decision in March of 1982 and it became the final decision of the Secretary. The district court adopted the recommendation of the magistrate and granted judgment in favor of the Secretary on December 8, 1983 and denied rehearing on October 30, 1984.

The record evidence disclosed that the deceased wage earner, Ivey, died on May 30, 1978. His death certificate reflected that he was single and domiciled in Ohio. It is not disputed that Young and Ivey were never ceremonially married before Ivey's death. The record incorporated an HEW Statement of Marital Relationship completed by Young on August 10, 1978 wherein she stated that she had been living with Ivey in Cleveland, Ohio from approximately April of 1965. She explained in that statement that this cohabitation was not continuous because they "would get mad and separate from time to time." On the questionnaire, she indicated that she and Ivey had no understanding that their relationship was permanent or would continue for any particular period of time or how it would be terminated. Additionally, she indicated that she did not consider herself married to Ivey merely because they were living together. In her statement to HEW, Young explained that she and Ivey were never formally married because Ivey "had a drinking problem and [she] told him when he quit drinking [she] would marry him." She also stated that she refused to assume his name because she "insisted on using [her] own last name." An HEW Child Relationship Statement also included in the record and signed by Young on August 11, 1978 failed to disclose any adequate acknowledgment on the part of Ivey of the paternity of either Nicholas or Alicia.

Young testified at the hearing that she and Ivey began cohabitating in 1965. Nicholas was born August 9, 1966 and Alicia was born December 13, 1967. Alicia's birth certificate named Ivey as the child's father; however, there was no identification of a father on the birth certificate of Nicholas. Young testified that prior to 1967, she and the children had depended totally on Ivey for support. Young explained that she had subsequently worked as a postal clerk from 1967 through 1974, during which time she and the children had not depended on Ivey. Since terminating her employment with the Post Office, she had held part-time employment, although the primary source of support for her and the children consisted of welfare payments. She testified that Ivey had been steadily employed until 1975 at a restaurant or in various laundries. Between 1975 and 1977, he had held part-time employment. Young testified before the ALJ that when Ivey had worked he contributed to the household expenses. She testified that Ivey had lived with her and the children subject to periods of separation until approximately November of 1977, at which time he departed. Young also stated that before his death at the end of May of 1978, Ivey had visited her home sometime during January or February of 1978.

Based on this record, appellants charged on appeal that: (1) the Secretary's determination that a common law marriage had not existed under Ohio law between Ivey and Young was not supported by substantial evidence; (2) the denial of benefits to the children was not supported by substantial evidence; (3) the Social Security Act's definition of "child" was unconstitutional; and (4) the Ohio intestate statute's treatment of illegitimate children was unconstitutional.

The standard applied by this court in reviewing a determination by the Secretary is whether the decision is supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). *See also Ellis v. Schweiker,* 739 F.2d 245, 248 (6th Cir.1984). The existence of substantial evidence to support the Secretary's findings must be based on the record as a whole. *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980); *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978). A reviewing court does not conduct a *de novo* examination of the evidence and it is not free to substitute its findings of fact for those of the Secretary if substantial evidence supports those findings and inferences.

*O'Banner v. Secretary of HEW*, 587 F.2d 321, 323 (6th Cir.1978); *Skalet v. Finch*, 431 F.2d 452, 453 (6th Cir.1970).

■ In considering Young's charge that the Secretary erred in refusing to recognize the existence of a common law marriage between her and Ivey under Ohio law, this court's attention is initially directed to 42 U.S.C. § 402(g), which authorizes payment of mother's insurance benefits to the surviving spouse of a deceased wage earner provided certain other requirements set out therein are satisfied. A prerequisite for qualifying as a surviving spouse, pursuant to the provisions set out in 42 U.S.C. § 416(a)(2) and § 416(c), is that the claimant be "the surviving wife of an individual." The Social Security Act applies the laws of the state wherein the wage earner was domiciled at death, as interpreted by the courts of that state, to determine whether the claimant and the deceased wage earner had been validly married for purposes of the statute. 42 U.S.C. § 416(h)(1)(A).

■ Ohio law controls resolution of the marriage issue. It is conceded that Young and Ivey had not entered into a ceremonial marriage. However, Ohio recognizes common law marriage under certain circumstances:

> A mutual agreement of marriage in praesenti made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, as a result of which the parties are treated and reputed as husband and wife in the community in which they reside, constitutes a common-law marriage.

*Markley v. Hudson*, 143 Ohio St. 163, 54 N.E.2d 304, 307 (1944). *See also Nestor v. Nestor*, 15 Ohio St.3d 143, 472 N.E.2d 1091, 1094 (1984).

The ALJ, in examining the evidence, concluded that, although Ivey and Young had lived together for extended, intermittent periods of time, the record failed to establish that they had entered into a marriage contract in praesenti or that they had held themselves out in the community as husband and wife. The ALJ observed that Young had not considered herself married to Ivey; she had repeatedly stated that she would have married Ivey only if and when he stopped drinking; the two had often lived separately and had not been living together at the time of Ivey's death; Young had consistently used her maiden name and the two children were identified by her maiden name; and Ivey's death certificate had identified him as single. Accordingly, this court concludes that substantial evidence supported the Secretary's determination that no marriage, ceremonial or common law, existed between Young and Ivey.

■ This court next directs its attention to the minor appellants' contention that the denial of benefits to them as surviving children was not supported by substantial evidence.

The Social Security Act mandates the satisfaction of three basic criteria to qualify a child for surviving child's insurance benefits of an insured, namely, the child must: (1) have filed an application for such benefits; (2) have been unmarried at the time of the filing and must have been either: (i) under eighteen years of age or a fulltime elementary or secondary school student under nineteen, or (ii) under a disability which began before age 22; and (3) have been dependent upon the deceased parent at the time of the parent's death. 42 U.S.C. § 402(d)(1). The Act further defines "dependency" in 42 U.S.C. § 402(d)(3).[1] In effect, the statute provides

---

1. The statute reads:

> (3) A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(C) of this subsection [the date of the death of the wage earner] unless, at such time, such individual was not

> living with or contributing to the support of such child and—
>   (A) such child is neither the legitimate nor adopted child of such individual, or
>   (B) such child has been adopted by some other individual.
> For purposes of this paragraph, a child deemed to be a child of a fully or currently

that legitimate children are "deemed dependent." Illegitimate children are deemed legitimate and therefore "deemed dependent" only if they qualify as "children" of the deceased wage earner within the meaning of 42 U.S.C. § 416(h)(2)(B) or (h)(3).

Section 416(h)(2)(B) in turn initially refers to the immediately preceding provision embodied in § 416(h)(2)(A). Section 416(h)(2)(A) provides in pertinent part as follows:

> (2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

42 U.S.C. § 416(h)(2)(A).

Ohio law recognizes that the child of a valid common law marriage is legitimate and may inherit from the father. *See Umbenhower v. Labus,* 85 Ohio St. 238, 97 N.E. 832 (1912). *See also In re Redman's Estate,* 135 Ohio St. 554, 21 N.E.2d 659, 661 (1939) (quoting *Umbenhower*); *Gatterdam v. Gatterdam,* 86 Ohio App. 29, 85 N.E.2d 526, 529 (1949) (same). In the case at bar, it has been concluded that no valid common law marriage existed between Ivey and appellant Young. However, under Ohio law, an illegitimate child may inherit from his or her father if, during the father's lifetime, the father either married the mother, formally acknowledged in pro-

bate court that the child was his issue, designated the illegitimate child as his heir-at-law, adopted the illegitimate child, or provided for the child in his will. *White v. Randolph,* 59 Ohio St.2d 6, 391 N.E.2d 333 (1979), *app. dismissed sub nom. Jackson v. White,* 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed.2d 743 (1980); Ohio Rev.Code §§ 2105.01 *et seq.* Unfortunately, there is no evidence of record in the case at bar that would qualify the minor appellants as children of the deceased wage earner under Ohio's intestacy laws to bring them within the ambit of 42 U.S.C. § 416(h)(2)(A).

Accordingly, this court's attention is next directed to the language of 42 U.S.C. § 416(h)(2)(B) or (h)(3) in an effort to determine if the minor appellants may otherwise be deemed legitimate under the Act. Section 416(h)(2)(B) provides that an applicant who is the son or daughter of the insured but does not qualify as a "child" of the individual under (h)(2)(A) is nevertheless considered to be the child of such individual if the deceased wage earner and the mother or father had been joined in wedlock by a marriage ceremony which, except for a legal impediment described in § 416(h)(1)(B), would have been a valid marriage. Appellant Young has failed to demonstrate that she qualified under the exception of § 416(h)(2)(B), thus the minor appellants cannot avail themselves of this qualifying statutory provision.

A claimant who has failed to qualify as a "child" of the deceased wage earner under § 416(h)(2) may nevertheless be deemed a child of the insured pursuant to § 416(h)(3)(C) if the following criteria are satisfied:

> (C) in the case of a deceased individual—
>> (i) such insured individual—
>>> (I) had acknowledged in writing that the applicant is his or her son or daughter,

42 U.S.C. § 402(d)(3).

insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual.

(II) had been decreed by a court to be the mother or father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the mother or father of the applicant, *and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.*

42 U.S.C. § 416(h)(3)(C) (emphasis supplied). The Social Security regulations, 20 C.F.R. § 404.366(a)(2), define contributions for support in the following terms:

(2) Contributions must be made regularly and must be large enough to meet an important part of your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. If the insured person only provides gifts or donations once in a while for special purposes, they will not be considered contributions for your support. Although the insured's contributions must be made on a regular basis, temporary interruptions caused by circumstances beyond the insured person's control, such as illness or unemployment, will be disregarded unless during this interruption someone else takes over responsibility for supporting you on a permanent basis.

The minor appellants herein have asserted that they had satisfied the criteria delineated in 42 U.S.C. § 416(h)(3)(C)(ii) and thus had qualified for child's insurance benefits thereunder. To qualify under (C)(ii), claimants must have proved they Ivey was their father and that he had been living with them or contributing to their support at the

time of his demise. The ALJ in addressing the issue decided that although the evidence supported the conclusion that Ivey was the natural (or biological) father of Nicholas and Alicia, it also affirmatively demonstrated that Ivey had not been living with the children at the time of his death, but rather had been living with his parents, and that he had not been contributing to the support of the children at that time. Moreover, Young's testimony disclosed that she had supported the children since 1974 with her welfare benefits, food stamps, and income from odd jobs. This court is constrained to conclude that the ALJ's determination that the minor appellants had not qualified for child's insurance benefits was supported by substantial evidence.

The minor appellants, however, insisted that decedent's contributions to their support over the entire period between 1965 and 1977, during which time he resided in the Young household subject to periodic absences, satisfied the statutory contribution requirement, citing to this circuit's decisions in *Childress v. Secretary of Health and Human Services,* 679 F.2d 623 (6th Cir.1982), *Parker v. Schweiker,* 673 F.2d 160 (6th Cir.1982), and *Boyland v. Califano,* 633 F.2d 430 (6th Cir.1980), in support of their argument.[2] The thrust of the cited case law in this circuit reflects an endorsement of a standard requiring continuous, regular, and substantial contributions toward the support of a deceased wage earner's illegitimate children while the wage earner's income is regular and substantial, but also discloses a recognition that a lesser standard is applicable to contributions paid during periods where the earned income of the decedent lacked continuity and substantiality. *See Boyland,* 633 F.2d at 430. In sum, the requirements of 42 U.S.C. § 416(h)(3)(C)(ii) and 20 C.F.R. § 404.-366(a)(2) may be satisfied in such circumstances "where the resources of the wage earner are scarce and the contributions to

---

**2.** *See also McNeal v. Schweiker,* 711 F.2d 18 (3d Cir.1983); *Jones v. Harris,* 629 F.2d 334 (4th Cir.1980).

his children important to them." *Id.* A determination of the issue focuses upon the father's economic capabilities and the actual dependency of the child on the father's contributions. *Parker,* 673 F.2d at 163; *Childress,* 679 F.2d at 629.[3]

The case at bar is distinguished from minor appellants' cited legal precedent in that Ivey was neither living in the Young household nor contributing *any* amounts to the support of the children from the date in 1977 when he departed the Young household and his demise on May 30, 1978. The record also failed to disclose any unusual circumstances analogous to the year-long hospitalization and deathbed request at issue in *Parker* that would have militated against the plain conclusion that Ivey had not been contributing any support, let alone support sufficient under the Act and relevant regulations, at the time of his death in May of 1978, which date is controlling in an interpretation of § 416(h)(3)(C)(ii) of the Act. Furthermore, as in *Kohut* it would appear that the minor appellants had been supported from 1974 and thereafter largely through welfare payments received by Young. Accordingly, the instant facts do not present a case of "economic dislocation" sought to be avoided by the Social Security Act as directed by the *Childress* court. *See Childress,* 679 F.2d at 629. *Cf. Mathews v. Lucas,* 427 U.S. 495, 507, 96 S.Ct. 2755, 2763, 49 L.Ed.2d 651 (1976) (child survivor's benefits "intended just 'to

replace the support lost by a child when his father ... dies ...' ") (quoting S.Rep. No. 404, 89th Cong., 1st Sess. 110 (1965) U.S. Code Cong. & Admin.News 1965, pp. 1943, 2050). On this record the court therefore concludes that the Secretary's determination was supported by substantial evidence.

Minor appellants next challenged the statutory definition of "child" as incorporated into the Social Security Act as arbitrary and unreasonable in distinguishing between illegitimate children and other classes of children defined therein. This argument has been foreclosed by the Supreme Court's decision in *Mathews v. Lucas,* 427 U.S. 495, 503–04, 96 S.Ct. 2755, 2761, 49 L.Ed.2d 651 (1976) (rejecting argument that Act's presumptive dependency provisions are unconstitutional). *See also Perry v. Richardson,* 440 F.2d 677, 679 (6th Cir.1971) (42 U.S.C. § 416(h)(3) does not violate due process or equal protection by discriminating against illegitimate children).

Minor appellants finally posited that the provisions of Ohio's intestacy statute, Ohio Rev.Code Chap. 2105, are unconstitutional because they deprive illegitimate children of equal protection of the law. This court finds no merit in this position. *See White v. Randolph,* 59 Ohio St.2d 6, 391 N.E.2d 333 (1979) (Ohio intestacy provisions not violative of equal protection with respect to

---

**3.** In *Boyland,* the statutory requirement was satisfied where the wage earner with a minimum income and despite his poverty made $5 to $10 payments to his illegitimate children from time to time, gave them gifts, clothing, and lunch money, and allowed them to stay at his home for weeks at a time. 633 F.2d at 434. In *Parker,* the statute was complied with where the wage earner had made regular contributions until he became hospitalized and bedridden a year before his death, the illegitimate child's mother was convinced that the wage earner would have assisted the child during his final year on his deathbed if requested, and the wage earner in fact requested his mother to continue to help the child whenever possible. 673 F.2d at 163–64. In *Childress,* the wage earner's $15–20 monthly payments constituted support under the Act where the wage earner was poor, earning as little as $600 to as much as $5,700 during the years in question while supporting a wife

and legitimate child, and the monthly welfare payments attributable to the wage earner's illegitimate child ranged from $27 to $37.57. 679 F.2d at 630. In *Kohut v. Secretary of HEW,* 664 F.2d 120, 122 (6th Cir.1981), on the other hand, the illegitimate child failed to demonstrate the requisite dependency on his biological father where the wage earner earned virtually no income during the two years before he died, never lived with the child or his mother, but rather lived with his wife and three legitimate children, who were themselves supported by welfare, the child's mother in fact contributed approximately $20 a month to the biological father, the testimony regarding contributions in the year of the wage earner's death was vague and uncorroborated by the mother's own witnesses, and the child appeared to be supported chiefly through welfare and his grandparents' contributions.

treatment of illegitimate children), *app. dismissed sub nom. Jackson v. White,* 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed.2d 743 (1980). *See also Kohut v. Secretary of HEW,* 664 F.2d 120, 122 (6th Cir.1981) (noting that Ohio Supreme Court in *White* resolved conflict in Ohio appellate courts as to constitutionality of Chapter 2105).

Accordingly, the judgment of the district court granting the Secretary's motion for summary judgment is hereby AFFIRMED.