867 F.2d 611
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David DOWNS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-3323.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1989.
 
 Before BOYCE F. MARTIN, Jr. and NATHANIEL R. JONES, Circuit Judges, and JOHN FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, David Downs, appeals the district court's judgment which affirmed the decision of the Secretary of Health and Human Services ("Secretary") to deny his claim for Supplemental Security Income ("SSI") benefits. For the following reasons, we affirm.
 
 I.
 
 2
 Downs was injured while working in a factory in July of 1978. He claims that this injury caused him to develop numerous mental impairments. Downs filed an application for SSI benefits on July 13, 1981 which was denied initially and upon reconsideration. After he filed a complaint in the United States District Court for the Southern District of Ohio, the district court remanded the case back to the Secretary for additional medical evidence. When the Secretary again denied his claim for benefits, Downs filed another complaint in the district court. On November 14, 1985, the district court again remanded the case to the Secretary and the Secretary again denied benefits. Although Downs filed a complaint in the district court based on the decision rendered in this third administrative hearing, the district court granted summary judgment in favor of the Secretary.
 
 
 3
 During the third administrative hearing, the ALJ relied on testimony presented during the first two hearings and on additional testimony provided at this hearing. Downs testified that he experiences headaches and has muscle spasms, low back pain and weakness in his legs. Although claimant stated that he stays in his room and watches television most of the time, he admitted that he occasionally goes out with his friends to movies, visits restaurants, and wrestles and talks on the telephone for several hours with his girlfriend. In addition, Downs's mother testified that he has moved out of the family home and is living independently.
 
 
 4
 Based on Downs's assertions that he spent most of the day laying down, Dr. Joel Steinberg testified that appellant was moderately severely restricted in his daily activities and that appellant perceived himself as being badly damaged and functionally limited. Dr. Steinberg felt, however, the patient could carry out simple instructions, could respond appropriately to supervision and could do simple repetitive tasks if no production requirements were placed upon him.
 
 
 5
 Dr. Edmund Goold, a consulting psychiatrist, found that while Downs had become irritable and was apprehensive about the future, he was mentally alert, was aware of his surroundings and had no delusions or hallucinations. Dr. Goold diagnosed a neurosis with features of anxiety and depression although he later determined that appellant was not depressed or markedly anxious and that his daily activities included cooking, listening to the radio, playing a guitar and watching television. Dr. Goold subsequently diagnosed a dysthymic disorder with conversion and obsessive-compulsive features yet concluded that Downs would be capable of understanding and remembering simple job instructions, interacting with supervisors and co-workers and dealing with the public. The doctor's report did note, however, that appellant would have difficulties in some job situations because he thinks slowly and has a tendency toward obsessive thinking.
 
 
 6
 Dr. Donald Brown, another consulting psychiatrist, testified that plaintiff had developed a generalized anxiety and passive-dependent personality disorders. He recommended psychiatric intervention and treatment at a pain and stress center. Another consulting physician, Dr. Frank, examined the appellant and found that while he had a chronic low back syndrome and seemed to be a "psychological cripple," there was insufficient objective medical evidence to support the conclusion that Downs was physically disabled.
 
 
 7
 Dr. Greg Castetter, Downs's treating physician, concluded that the latter had developed a severe mixed psychoneurotic reaction with features of conversion and depression. He noted that Downs was totally disabled from a psychiatric standpoint and in need of psychotherapy. Dr. Castetter consistently stated his belief that Downs was totally disabled due to his severe mixed psychoneurotic reaction.
 
 
 8
 In response to the ALJ's hypothetical, Dr. Riccio, a vocational expert, testified that an individual who was capable of understanding and carrying out simple instructions, interacting with supervisors and dealing with the public but who had some nonexertional limitations imposed by obsessive and slow thinking would be able to perform light jobs such as an assembler, custodian, inspector or gas station attendant. He further testified that over 12,000 such jobs existed in the central Ohio area.
 
 
 9
 Although the ALJ recognized that Downs's impairments met the minimum test of severe within the meaning of 20 C.F.R. Sec. 404.1520(c) (1988), the ALJ concluded that he was not disabled from a physical standpoint because the only restriction on his ability to work was a limitation in lifting over twenty pounds. The ALJ determined that Downs had an emotional impairment within the meaning of 20 C.F.R. Part 404, Subpart P, Appendix 1 because appellant has a neurosis characterized by features of anxiety, conversion and obsessive-compulsiveness. The ALJ concluded, however, that his impairment does not meet the level of severity described in these regulations because there is no evidence which indicates that Downs has a marked restriction of daily activities or a deterioration in his personal habits. The ALJ specifically rejected Dr. Castetter's conclusions because of his belief that Downs made incorrect representations to his treating psychiatrist concerning the activities in which he participated outside of his house.
 
 
 10
 In concluding that the record did not have objective clinical findings which would support a finding of physical disability, the ALJ also noted that Downs, "when motivated to do so, is able to overcome his apprehension and exert himself to perform exertional work activity of a 'light' nature." J.App. at 354. Based on Dr. Riccio's testimony, the ALJ found that appellant retains the residual functional capacity to perform work existing in significant numbers in the national economy. Thus, Downs was found not to be disabled within the meaning of the Social Security Act.
 
 II.
 
 11
 Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Substantial evidence is generally defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). On appeal, this court does not review the evidence de novo, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (6th Cir.1983). Rather, these functions are left to the Secretary's discretion. Young v. Secretary of Health and Human Services, 787 F.2d 1064, 1066-67 (6th Cir.), cert. denied, 107 S.Ct. 585 (1986). Finally, this court must examine the evidence taken as a whole, Duncan v. Secretary of Health & Human Services, 801 F.2d 847 (6th Cir.1986), and must not focus and base its decision on one piece of evidence while disregarding other pertinent evidence. Garner, 745 F.2d at 388 (citations omitted).
 
 III.
 
 12
 Downs alleges that the Secretary rejected credible evidence that he is disabled due to severe psychological impairments and asserts that the medical experts unequivocably testified that his psychological impairments impede his ability to work. In reviewing the record, we note that only the treating physician testified that the appellant was totally disabled and based this conclusion on Downs's assertion that he seldom left his home or had contact with people outside of his home. Although this court has held that "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim," this court has also held that "the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir.1988).
 
 
 13
 A review of the record indicates that Downs's statements to his physicians were not always consistent with the testimony he gave the ALJ. Since Downs testified that he left the house to visit friends, go to movies, etc. and since his mother testified that he has now moved out of the house, the ALJ had a "good reason" not to accept Dr. Castetter's conclusion that Downs is totally disabled. Furthermore, "[s]ince the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 928 (6th Cir.1987).
 
 
 14
 Although the record indicates that appellant suffers from psychological impairments which would cause difficulties in the workplace, these impairments do not rise to the level of total disability on the basis of a mental disorder as provided in 20 C.F.R. Part 404, Subpart P, Appendix 1. This regulation provides that, in assessing the severity of mental disorders, the ALJ must examine the functional limitations in the following areas: activities of daily living, social functioning, concentration, persistence, and a deterioration or decompensation in work or work-like settings. Because substantial evidence in the record supports the Secretary's conclusion that Downs is not severely limited in his daily activities and social functioning and that he would be able to function in some work settings, we affirm the Secretary's conclusion of nontotal disability.
 
 IV.
 
 15
 Appellant also claims that the Secretary erred in relying on the testimony of the vocational expert. He contends that the Secretary posed an inaccurate hypothetical to the vocational expert in determining whether there were jobs in the economy which Downs could perform. The ALJ determined that the latter's testimony concerning his perceptions of his own limitations was not credible. Because there was substantial evidence in the record which indicates that Down's activities are not as severely restricted as he contends and because medical experts testified that he has the ability to understand and carry out simple instructions, to relate to supervision and to perform low stress work in a non-competitive environment, we find that the ALJ's hypothetical was supported by the record. Hardaway, 823 F.2d at 927-928. Thus, we affirm the Secretary on this point.
 
 V.
 
 16
 For the reasons stated above, the judgment of the district court is hereby AFFIRMED.
 
 
 
 *
 Honorable John Feikens, United States District Court for the Eastern District of Michigan, sitting by designation