**David R. MORGAN, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. C–1–81–637.**

United States District Court, S.D. Ohio, W.D.

Jan. 18, 1983.

Philip A. Logan, William S. Wyler, Cincinnati, Ohio, for plaintiff.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for defendant.

TIMOTHY S. HOGAN, Senior District Judge:

Plaintiff brought this action under 42 U.S.C. § 405(g), seeking review of a final decision of the defendant, Secretary of the Department of Health and Human Services, denying the plaintiff's application for child's insurance benefits under § 202(d)(1) of the Social Security Act (SSA). The parties each filed motions for summary judgment supported by supplemental memoranda (docs. 4 and 5). In addition, the defendant has filed a second motion for summary judgment (doc. 6) to which plaintiff has responded by way of memorandum (doc. 7).

The applicable standard of review is whether there was substantial evidence to support the factual findings of the Secretary and whether the proper legal conclusions were drawn from those facts. The Secretary's findings of fact may not be disturbed on review unless not supported by "substantial evidence", but his legal conclusions based on those facts are reviewable in their entirety. *Adams v. Weinberger,* 521 F.2d 656, 658 (2d Cir.1975).

The question before the Administrative Law Judge (ALJ) was whether or not the plaintiff, a minor, was a "child" of the deceased wage earner so as to be entitled to child's benefits under § 202(d)(1) of the Act. That section provides in pertinent part that every child of an individual who dies a fully or currently insured individual shall be entitled to child's insurance benefits if an application has been filed and if at that time the child was unmarried and either had not attained the age of eighteen or was a full-time student and had not attained the age of twenty-two and was dependent upon such individual at the time of his death. The SSA allows insurance benefits for the illegitimate as well as the legitimate children of a fully insured deceased wage earner. *See* 42 U.S.C. §§ 402(d)(1), 416(e), 402(d)(3) and 416(h). In order to qualify for support, however, a child must have been dependent on the wage earner at the time of his death. 42 U.S.C.

§ 402(d)(1)(C). Legitimate children are "deemed dependent" under the Act. 42 U.S.C. § 402(d)(3). Under the same code section an illegitimate child will be deemed "legitimate," and thus "deemed dependent," if he can show that he is a "child" of the wage earner within the meaning of 42 U.S.C. § 416(h)(2)(B) or § 416(h)(3). Also, an applicant will be deemed a "child" of the wage earner if he could inherit personal property from the wage earner under the intestacy laws of the state of the wage earner's domicile at the time of his death. 42 U.S.C. § 416(h)(2)(A).

The ALJ found that the plaintiff had failed to prove eligibility under the Ohio Intestacy Statute, Ohio Revised Code §§ 2105.15 and 2105.18. Plaintiff had initially attacked both the constitutionality and the application of that statute but the ALJ held that *White v. Randolph,* 59 Ohio St.2d 6, 391 N.E.2d 333 (1979) had foreclosed that discussion. The ALJ held, therefore, that since plaintiff was not able to inherit intestate personal property under the laws of Ohio, then he could not be found to be a "child" under 42 U.S.C. § 416(h)(2)(A) (tr. 12–16). The plaintiff has not focused on this finding and since we can decide this case on other grounds we do not disturb that part of the ALJ's ruling.

The ALJ also found, and there is ample evidence to support his findings, that the plaintiff had not acquired the status of a "child" under either 42 U.S.C. § 416(h)(2)(B) (marriage by parents that would be valid except for non-obvious legal impediments) or 42 U.S.C. § 416(h)(3)(C)(i) (written acknowledgement of paternity by father, court decree of paternity, or court order of support) (tr. 15, 16).

Plaintiff does not contest these findings (doc. 5). Plaintiff does, however, claim eligibility under 42 U.S.C. § 416(h)(3)(C)(ii). This subsection provides that a claimant can be deemed a "child" if " . . . such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died." It is the question of plaintiff's eligibility under this subsection that is in issue in this case.

By way of background, the record shows that plaintiff, by and through his mother, Sue Griffith, filed an application for surviving child's insurance benefits on January 24, 1980 (tr. 44–47), claiming under the account of Raymond L. Darnell, deceased. The Social Security Administration sent its notice of disapproved claim on May 5, 1980 (tr. 48). Plaintiff filed a request for reconsideration on June 6, 1980 (tr. 49) which was denied on August 4, 1980 (tr. 50–54). Plaintiff then requested a hearing on September 9, 1980 (tr. 21). The hearing was held on January 13, 1981 (tr. 22–43) and the ALJ rendered his decision on February 27, 1981 (tr. 5–17). The Appeals Council denied plaintiff's request for review on May 26, 1981 (tr. 3). Plaintiff then brought this action for judicial review.

At the hearing, the plaintiff's mother, Sue Griffith, testified that the deceased wage earner, Raymond L. Darnell, was the father of the plaintiff (tr. 35). She also testified that Raymond Darnell told several people, including family members and friends, that he was the father of the plaintiff and that he was going to shortly marry her (tr. 36). The written statements of Beulah Brown, the wage earner's mother, and of Kathy Smith, his sister, were introduced into the record (tr. 75–77). In the same light, affidavits from two of Mr. Darnell's friends, Ronnie and Paul Denniston, were received (tr. 81 and 82). All four individuals stated that one or two weeks prior to his death, June 10, 1965, Mr. Darnell had told them that he was getting married to Sue Griffith (then Sue Morgan) and that she was pregnant by him.

This evidence was not disputed by the Secretary and was accepted by the ALJ. Indeed, as his Finding Number 3 the ALJ stated, "The evidence establishes that the deceased wage earner, Raymond L. Darnell, orally admitted that he was the father of David R. Morgan prior to the child's birth and prior to his own death" (tr. 16).

The plaintiff contends that, this being the case, the first requirement of 42 U.S.C. § 416(h)(3)(C)(ii) is met, namely that "evidence satisfactory to the Secretary" be introduced to show paternity.

The Secretary acknowledges that the evidence "suggests" that the wage earner orally admitted paternity but states that that evidence, without more, is insufficient on the grounds that it is too speculative. The Secretary argues that in light of the wage earner's failure to take other steps to acknowledge the child, the oral testimony is suspect.

The plaintiff, however, points to a recent decision from this Circuit, *Parker v. Schweiker,* 673 F.2d 160 (6th Cir.1982), as holding that the Secretary may not consider the lack of the "formal indicators" set out in 42 U.S.C. §§ 416(h)(2)(A), 416(h)(2)(B) and 416(h)(3)(C)(i) as evidence against an applicant who is relying on 42 U.S.C. § 416(h)(3)(C)(ii).

The Secretary would distinguish *Parker* on the basis that the outside evidence in that case established paternity much more strongly than in the instant case.

The position of the ALJ in this regard is somewhat ambiguous but it appears from the record (tr. 15) that he accepted the statements and affidavits previously noted as establishing that the deceased wage earner, Raymond L. Darnell, was the father of the plaintiff. There is substantial evidence to support that finding. This Court, therefore, finds that the first requirement of 42 U.S.C. § 416(h)(3)(C)(ii) has been met in this case.

■ There remains, however, the second part of that subsection to be considered. This second part requires that the insured individual must have been "living with or contributing to the support of the applicant at the time such insured individual died."

The Social Security Administration, in denying plaintiff's request for reconsideration, stated in this regard that, "In the case of a posthumous child the living with or contributions would refer to the child's mother during her pregnancy" (tr. 54). The

ALJ took an even narrower view stating that, "As to the latter alternative methods of qualification, the qualification of living with or contributing to the child's support at the time of the wage earner's death, refers in the case of posthumous child, to the wage earner *living with the child's mother during her pregnancy"* (tr. 15) (emphasis added).

Finding no evidence that the wage earner actually lived with the applicant's mother during the term of her pregnancy, the ALJ, in accord with this above standard or test, ruled against the plaintiff finding that he failed to qualify under 42 U.S.C. § 416(h)(3)(C)(ii) (tr. 15 and 16).

The ALJ erred in applying this test or standard to the statute.

The Social Security Act is remedial in nature and its humanitarian aims necessitate that it be construed broadly and applied liberally. *Adams v. Weinberger,* 521 F.2d at 659 (2d Cir.1975).

The Sixth Circuit has in two very recent decisions applied that rationale in holding that the "support requirement" of 42 U.S.C. § 416(h)(3)(C)(ii) must not be applied restrictively or narrowly. *Parker v. Schweiker, supra; Childress v. Secretary of Health and Human Services,* 679 F.2d 623 (6th Cir. 1982). While it is true that neither of these cases is directly applicable in that they deal with an applicant who had been born prior to the death of the wage earner, still, the tone of those decisions rings loudly and mandates a reversal in this case.

First, in *Parker,* the Court, after holding that the claimant had presented satisfactory evidence to establish paternity, held also that the "support requirement" of 42 U.S.C. § 416(h)(3)(C)(ii) is not a fixed rule requiring regular or substantial support, but that, on the contrary, it is one which "must be evaluated in light of the father and child's actual circumstances." 673 F.2d at 163. In so holding, the Sixth Circuit expressly reaffirmed its earlier holding to the same effect in *Boyland v. Califano,* 633 F.2d 430 (6th Cir.1980). In that case also, the Sixth Circuit had concluded that the support requirement had to be considered in light of

the father's ability to contribute and in light of the actual needs of the child.

Just two months after *Parker,* the Sixth Circuit in *Childress,* again affirmed its holdings in *Boyland* and *Parker* stating that those cases "are the law of this Circuit and control the present case." 679 F.2d at 630. The Court reached its decision in the face of a non-acquiescence statement which had been issued by the Social Security Administration in which the Administration had stated its disapproval of *Boyland,* and, despite 20 C.F.R. § 404.366(a)(2) a fairly new regulation which incorporates the test of "regular and substantial" payments. The Court in *Childress* left open the question of whether this new regulation could be applied retroactively, finding that, in any event, the support given in that particular case was substantial enough. The Court did note, however, that:

> An absolute standard of substantiality, however, could produce unjustifiably harsh results where a poor father has been contributing conscientiously to the support of his child but has not been able to afford payments large enough to satisfy a fixed standard of substantiality. Such a standard would exclude from the statute those poor children who need the support the most, and those poor parents who are making small payments but at a big personal sacrifice. This result would be contrary to the policy of the Act of offsetting the economic dislocation suffered by dependents on account of the death of the wage earner. *Mathews v. Lucas,* 427 U.S. 495, 507 [96 S.Ct. 2755, 2763, 49 L.Ed.2d 651] (1976); *Jimenez v. Weinberger,* 417 U.S. 628, 634 [94 S.Ct. 2496, 2500, 41 L.Ed.2d 363] (1974).

679 F.2d at 629.

Persuasive, too, is the reasoning expressed by the Second Circuit in *Adams v. Weinberger, supra,* noted with approval in *Parker.*

Like the plaintiff in our case, the plaintiff in *Adams* was a posthumous child who was seeking to prove entitlement under 42 U.S.C. § 416(h)(3)(C)(ii).

The Second Circuit first noted that although a posthumous child is not foreclosed from benefits merely because he was not born prior to the insured individual's death, that fact makes any standards used to measure the degree of support in cases involving living children only marginally helpful.

After stating that the Social Security Act was to be "construed broadly" and "applied liberally" the Court stated further that, "That being the case, the terms of the Act requiring a potential claimant to show dependency should not be construed in such a manner as to withhold benefits in marginal cases." 521 F.2d at 659.

The Court, however, was certainly aware that the qualifying sections of the Act are necessary in the sense that they permit the Secretary to sift out and reject "spurious claims." In an interesting analysis, applicable here, the Court found, however, that the claim before it was not of this nature:

> Of course, the most serious of the so-called "spurious" claims would be those by such claimants who are in reality not children of the insured wage earner. The present case certainly does not fall into that category since the Secretary has admitted that Devlin Adams was the son of Peter McGinn. The first test of 42 U.S.C. § 416(h)(3)(C)(ii) is thus met.

> The other class of other "spurious" claims which Congress and the Secretary apparently fear is that of claims from children who have no financial interest in their fathers' deaths but for the possible windfall benefits which the SSA would bestow upon them. In other words, the Secretary fears an onslaught of claims from children who by no stretch of the imagination could be considered "dependent" or who, in essence, lost nothing from their parents' deaths. In our case, Devlin Adams lost the measure of support that he could have expected from his father in the future if death had not intervened. Based upon the evidence adduced at the hearing, it is clear that Devlin Adams does not fall within that group of children who had no extra-statutory financial interest in their fathers' deaths.

> Since Congress has not placed any specific dollar amount upon the measure-

ment of support, (citation omitted), *our assessment of the appropriate level of support necessary for an illegitimate posthumous child to meet the statutory burden must be guided by common sense and the congressional desire to benefit all children who have lost the support of insured parents.*

*Id.* at 659, 660. (Emphasis added.)

The Second Circuit noted that a purely mechanistic application of the support requirement applied in the case of a posthumous child would prevent almost every posthumous child from recovery since an unborn child is completely dependent upon its mother for all of its human needs. The Court concluded that such a result was clearly not warranted, given the purposes of the insurance provisions of the SSA. *Id.* at 660.

Even more important in light of the position of the Secretary in this case is the Court's next sentence which states that, *"Applying the 'regular' and 'continuous' test to the measure of support given Ms. Adams is improper since the dependency of the mother is not at issue." Id.* at 660 (emphasis added). It will be recalled that, as noted earlier herein, the position of both the Social Security Administration and the ALJ in this case has been that in the case of a posthumous child, the support and contributions requirement must be examined in light of the deceased wage earner's support of and/or living with the applicant's mother.

The Second Circuit continued stating:

*In determining whether or not the insured, wage earning father was contributing to the support of the illegitimate, posthumous child applicant at the time of the father's death, a more relevant test is called for. We must ask whether the support by the father for the unborn child was commensurate with the needs of the unborn child at the time of the father's death. If it was, then the statutory requirements have been meet.*

*Id.* at 660 (emphasis added).

In concluding that the statutory requirement had been met in that case the Court cited several facts. The Court spoke of the benefit the unborn child received by virtue of the fact that his mother was permitted to live rent-free in the father's apartment. The Court also cited the occasional financial payments given by the father to the applicant's mother, which payments contributed, albeit indirectly, to the child's health and well-being. Also in that case, McGinn gave Ms. Adams the One Hundred ($100.00) Dollar registration fee for the hospital room to be used at the baby's birth. The Court then concluded that McGinn could not have contributed any more support than he did and that his death prevented him from doing more than that either before or after the child's birth. That being the case, it held that McGinn's support of Devlin Adams was commensurate with his needs at the time of his death, and that the law requires no more than that. *Id.* at 660.

In the case at bar the very same thing can be said of the deceased, Mr. Darnell. True, there is no evidence that Mr. Darnell provided the plaintiff's mother with housing, but there is no evidence that such was needed. Indeed, the evidence introduced at the hearing before the ALJ indicates that until their marriage, the parties had chosen to live separately as, after all, the marriage was very imminent. In a few very short weeks, there would be a whole life of "living with" and "contributing to" the support of the wife and child. The lack of the facts noted in *Adams* does not militate in favor of a different result here. If anything, the support given by the deceased wage earner for his unborn child was even stronger in the case at bar. By announcing his intention to marry Ms. Griffith, Mr. Darnell was announcing his intention to care for, nurture, and support his unborn child. He was not shirking his responsibility by turning his back on the situation. Nor was he merely going "partway" by merely providing the mother with a place to live and some money as was the case with the wage earner in *Adams* (there was no agreement as to marriage in that case). The plaintiff was not born until December 11, 1965. The

deceased wage earner died on June 10, 1965, some two weeks before he was to marry the plaintiff's mother. But for his untimely death, the wage earner would have shortly begun to carry out his intentions.

Therefore, it is the finding of this Court, that the support given by the deceased wage earner, Raymond L. Darnell, to his unborn child was commensurate with said child's needs at that time and under those circumstances. Consistent with *Adams, Boyland, Parker* and *Childress,* we find that the defendant erred in construing the statute, 42 U.S.C. § 416(h)(3)(C)(ii) in this case. The decision of the Secretary, therefore, is reversed. This case is remanded to the Secretary for an award of benefits.