**Lois F. HYLEMAN for John M. HYLEMAN [John M. Leatherman, S.S. # 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], Plaintiff,**

v.

**Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, Defendant.**

### No. C-C-84-470-M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

June 21, 1985.

**438**

Calvin B. Hamrick, Gastonia, N.C., for plaintiff.

Jim Sullivan, U.S. Atty., Charlotte, N.C., for defendant.

### ORDER

McMILLAN, District Judge.

On February 24, 1983, plaintiff Lois F. Hyleman applied for child's insurance benefits on behalf of her son, John M. Hyleman, alleging that he was the posthumous son of John M. Leatherman, who died fully insured on December 8, 1979, more than three months before John M. Hyleman's birth.

After initial administrative denials of the claim, a hearing was held by an administrative law judge (ALJ) on November 28, 1983, at which Lois Hyleman and two friends, Robert and Deborah Dixon, testified. The ALJ issued a decision on December 15, 1983, in which he found that John M. Hyleman is not the "child" of John M. Leatherman for purposes of satisfying the requirements of the Social Security Act and is not, therefore, eligible for child's insurance ben-

efits. Review of that decision was denied by the Appeals Council on April 23, 1984.

Plaintiff thereafter filed this timely complaint pursuant to 42 U.S.C. § 405(g) for review of the Secretary's decision. Both parties have filed motions for summary judgment. The Secretary's decision must be affirmed if supported by substantial evidence.

The Social Security Act provides for a monthly payment to certain designated classes of survivors on the death of an insured individual with the required insured status. One class of survivors is a child of such an insured individual who is less than eighteen years old (or less than twenty-two years old in certain circumstances), and who was dependent on the insured individual at the time of the insured individual's death. 42 U.S.C. § 402(d)(1). A child is deemed dependent upon the parent (his father, in this case) at the time of the parent's death unless, at that time, the child was neither the legitimate nor the adopted child of the parent, and the parent was not living with or contributing to the support of the child. 42 U.S.C. § 402(d)(3). A child is also deemed to be the legitimate child of the insured individual as required by § 402(d)(3), even if not meeting the specific requirements of the section, if the child is deemed to be a child of the insured individual pursuant to 42 U.S.C. § 416(h)(2)(B) or (h)(3).

The parties agree that the *only* relevant provision under which plaintiff might be entitled to prove her son's eligibility for child's insurance benefits is found at 42 U.S.C. § 416(h)(3)(C)(ii):

> [An applicant shall be deemed to be the child of the insured individual if in the case of a deceased individual,] such insured individual is shown by evidence satisfactory to the Secretary to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

In his decision, the ALJ assumed "arguendo" that the testimony of Ms. Hyleman and her friends that John M. Leatherman was

the father of the child was true and that John M. Leatherman had acknowledged the unborn child, John M. Hyleman, to be his child. At a hearing before this court on this matter on June 6, 1985, the Assistant United States Attorney stated that the Secretary did not contend that John M. Leatherman was not the child's biological father. Upon a review of the record, the court finds that there is substantial evidence to support the Secretary's conclusion that the insured individual has been shown by "evidence satisfactory to the Secretary to have been the ... father of the applicant."

In order to be deemed the child of the insured individual for the purpose of receiving benefits, however, the applicant must also show that John Leatherman "was living with or contributing to the support of the applicant at the time ... [he] died."

Ms. Hyleman has stated under oath that John Leatherman was not contributing to her or the unborn child's support at the time of his death and she does not raise that provision in this action. Therefore, the issue upon which the court must focus, as did the ALJ, is whether the child was "living with" Mr. Leatherman at the time of Mr. Leatherman's death within the meaning of the Social Security Act.

The Secretary's own guidelines and the case law establish that if the child in question (the applicant) was *in utero* at the time of the insured individual's death and is born alive, the "living with ... the applicant at the time" of death requirement is fulfilled if the insured individual had been "living with" the mother of the *in utero* child at the time of the insured individual's death. Social Security Ruling 68–49; *Wagner v. Finch*, 413 F.2d 267 (5th Cir.1969).

The purpose of the sections of the Social Security Act involved in this case is "to provide support to children who have lost either the actual support of an insured parent or the anticipated support which that parent would have been expected to give to have his death not intervened." *Adams v. Weinberger*, 521 F.2d 656, 659 (2nd Cir.1975), citing to *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). Where the child shows

to the satisfaction of the Secretary that the father was insured and that the insured individual was indeed the child's father, "the role § 416(h)(3)(C)(ii) plays in screening spurious paternity claims need not detain us." Only the issue of "dependency" or anticipated "dependency" is important. *Evelyn M. Parsons, for Charles I. Bryant, Jr., infant, v. Health and Human Services*, 762 F.2d 1188, 1190 (4th Cir.1985).

■ Because the Social Security Act is remedial and has humanitarian aims, it is necessary that it be construed broadly. Therefore, courts that have interpreted the "contributing to the support of" provision of 42 U.S.C. § 416(h)(3), have held that the support requirement is not a fixed rule but one which "must be evaluated in light of the father and child's actual circumstances." *Parker v. Schweiker*, 673 F.2d 160, 163 (6th Cir.1982); *Parsons v. HHS, supra*, at 1191; *Doran v. Schweiker*, 681 F.2d 605 (9th Cir.1982); *Adams v. Weinberger*, 521 F.2d 656 (2nd Cir.1975). In particular, where the child is unborn at the time of the father's death, the measure of support required must be tailored to the reasonable support requirements for a child yet unborn.

■ A similar "tailored" standard has been applied in the evaluation of the "living with" requirement of § 416(h)(3)(C)(ii), the requirement plaintiff claims to meet. In *Wagner v. Finch*, 413 F.2d 267 (5th Cir. 1969), the situation of the child claiming insurance benefits was nearly identical to that of John Hyleman; her father was killed after her conception but prior to her birth and her parents had never actually been day-to-day residents of the same household. There, the court noted that "Substance, not form, must govern," and that the court must view the meaning of "living with" within the context of the actual realities of the parents' lives. They were low income people, and because of the particulars of their situation, distance and lack of money, theirs was not a "day-to-day relationship." The court noted that the wage earner had told his mother that he was "living together" with the mother of the child. He came over for weekend visits

and he and the child's mother had planned to marry in the near future.

> We would strain ordinary meaning to require that all the proper prerequisites to maintaining a home are the same sine qua non to entitlement under the Act. . . . Apparently, Congress did not discuss or contemplate any dollar amount of support or minutes, hours, days or years of "living with" in order to qualify, once the fact of parenthood was established. To the extent possible, Donna [the child] has met all the requirements. Insofar as she was capable of dependency on the wage earner, she was dependent on him on the date of his death.

*Id.* at 268.

In *Morgan v. Schweiker*, 558 F.Supp. 331 (S.D.Ohio 1983), the court found that where the father of the child had apparently not provided any financial support to the mother nor actually shared a house with her in a day-to-day relationship, the "living with" provision was still met. The only evidence cited in the order to illustrate the indicia of paternity was from the mother and her friends who stated that in the weeks prior to his death, the father had told them he was going to marry the child's mother and that "she was pregnant by him." *Id.* at 333. The court noted that the purpose of the Act and the case law prevented a "mechanistic" application of support and "living with" requirements. "By announcing his intention to marry Ms. Griffith [the child's mother], Mr. Darnell [the child's father] was announcing his intention to care for, nurture, and support his unborn child," thus meeting the true requirement of the Act that the child show that the parent would have been expected to support the child had death not intervened. *Id.* at 336.

At the hearing, Ms. Hyleman testified that she had been spending weekends with Mr. Leatherman since early 1977. Because they usually worked six days a week, and she worked third shift, they could only spend Saturdays and occasionally Fridays together. He would come to her house and spend a few hours and then they would go either to the house of friends or to a hotel to spend the night together (Tr. 21–22).

After she discovered she was pregnant, they made plans to get married (Tr. 24).

Tim Dixon, a friend of Ms. Hyleman and Mr. Leatherman, testified that "On numerous occasions he [Mr. Leatherman] admitted that, in fact, he was kind of proud, that he was the father. And that he intensions [sic] on, they were going to get married. He was just about like me and my wife before we got married" (Tr. 29). These communications were made in August or September, 1979, three months before Mr. Leatherman died and six months before the birth of the child.

Deborah Dixon also testified that in August, 1979, Mr. Leatherman told her he was the father of Ms. Hyleman's child and that they had plans to get married (Tr. 32).

An affidavit was filed by George H. Wright, a friend of the couple. He stated that Mr. Leatherman had told him that Ms. Hyleman was pregnant with his child and that they were going to be married (Tr. 54).

Plaintiff tendered other witnesses at the hearing which the ALJ chose not to hear, stating instead that "I'm sure the other witnesses will testify to substantially similar fact pattern that the decedent told them that he was the father, and that he had plans to get married to the claimant" (Tr. 33).

While the ALJ remarked in his opinion that the testimony of the affiants "is less than totally convincing" since "it is understandable that they might want to assist Ms. Hyleman in her predicament," he made no finding that the witnesses were not credible. Instead, he found, as a matter of law, that "their relationship does not constitute a 'living with' relationship." He went on to say that "every couple that spends the night together is 'living with' each other is a strained definition of the term. Obviously, the intention of Congress was to provide for the offspring of insured wage earners who had assumed a more or less permanent relationship and household" (Tr. 11).

The ALJ's conclusion contains two errors; this record shows that this was *not* a couple who had just "spent the night together." The uncontradicted testimony is that they had been together for nearly four

years at the time of Mr. Leatherman's death. The uncontradicted testimony is that they were planning to get married and had told others so.

In addition, the ALJ misconstrues the "intention of Congress." Congress was *not* mandating "more or less permanent relationship and household." Congress was, by all interpretations under the cases and common sense, seeking to provide for a child where the evidence indicates that, had the parent lived, the parent would have been expected to provide support for the child.

Mr. Leatherman did not hide his paternity nor deny it. In fact, the testimony was that he was proud of the fact and that he announced to friends his and Ms. Hyleman's intention to marry. The parties regularly cohabitated, although the frequency and the location of the cohabitation were limited by work requirements and the exigencies of their (then) current situations.

The ALJ's conclusion that plaintiff has not met the "living with" requirement in order to be deemed the child of the insured individual for the purposes of 42 U.S.C. § 416(h)(3)(C)(ii) and § 402(d)(3) is in error and is not based on substantial evidence.

IT IS THEREFORE ORDERED that the Secretary's decision denying John Hyleman child's insurance benefits is REVERSED.