Margaret CHESTER for Christopher O. CHESTER, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 86–5005.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1986.

Decided Jan. 5, 1987.

Jacqueline Aubrey (argued), Appalachian Research and Defense Fund of Kentucky Inc., Richmond, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., John S. Osborne III (argued), for defendant-appellee.

Before WELLFORD and GUY, Circuit Judges, and PECK, Senior Circuit Judge.

PER CURIAM.

Plaintiff appeals from summary judgment affirming the Secretary's denial of social security benefits. For the reasons set forth below, we affirm.

On October 25, 1978, plaintiff, Margaret Chester, filed an application for surviving child's insurance benefits on behalf of her son, claimant, Christopher O. Chester, based on the social security earnings record of the deceased wage earner, Brad Montgomery. The application was denied initially and on reconsideration because the plaintiff failed to show that the wage earner had acknowledged his paternity in writing, or that the wage earner was the child's father and lived with the child or contributed to the child's support. Hearings were held before an Administrative Law Judge (ALJ) who denied the claim for benefits ruling that Christopher was not the "child" of the deceased wage earner within the meaning of the Social Security Act ("the Act"). The ALJ's decision was approved by the Appeals Council and plaintiff appealed to the district court.

The district court judge found that the ALJ had erred in finding that Brad Montgomery was not the father of the claimant. The district court remanded the case for determination of "whether the insured was contributing to the support of the claimant at the time of the insured's death." On remand, the ALJ concluded that the claimant did not receive support from the deceased wage earner; and therefore, the claimant was not entitled to child's insurance benefits.

On appeal before the Appeals Council, plaintiff introduced an alternative theory for eligibility. Plaintiff argued that Christopher was the "child" of the deceased under the intestacy laws of Kentucky; and therefore, was entitled to benefits under the Act. The Appeals Council rejected plaintiff's arguments finding that the deceased did not contribute to the child's support and that plaintiff failed to prove by "clear and convincing evidence" that Christopher was the child of the insured as is required under the intestacy laws of Kentucky. This ruling was affirmed by the magistrate whose recommendation to deny benefits was accepted by the district court. Plaintiff appeals this decision.

Plaintiff testified that she first met Brad Montgomery in July of 1976. In December of that year, Brad Montgomery left his home in Kentucky to go to Florida. He left a note for his parents which stated in part, "I love mom, dad, Brian, and Margaret more than anything," and "tell Margaret I will send some money for the baby when I get a job." Margaret Chester claimed that she received a Christmas card from Brad Montgomery which contained approximately $30.00. Apparently, she did not receive any other communication from him while he was in Florida.

Margaret Chester gave birth to Christopher O. Chester on February 21, 1977. Brad Montgomery did not contribute toward the payment of any of the medical

costs associated with the delivery of the child. Ms. Chester gave the child her own surname and she refused to disclose the identity of the father. At the hearing, Ms. Chester explained her reticence by saying that she and Brad Montgomery wanted to "surprise" his parents with the baby.

Brad Montgomery returned from Florida on April 21, 1977. He was shot to death on April 23, 1977. During this brief interval after his return to Kentucky, he allegedly had a single telephone conversation with the plaintiff. Brad's father also testified that during this period, Brad stated that he was a father and that the mother was "Margaret from Mt. Sterling." Brad had previously disclosed this fact to his mother; however, neither parent had ever met Margaret nor did they know her last name. Mr. and Mrs. Montgomery did not meet the plaintiff until over a year later when they located her in Mt. Sterling.

Based on this record, plaintiff makes three claims on appeal: (1) that Brad Montgomery had made a written acknowledgement of paternity; (2) that Brad Montgomery contributed to the support of his child; and (3) Christopher was the intestate heir of Brad Montgomery under Kentucky law.

The standard applied by this court in reviewing a determination by the Secretary is whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427. The existence of substantial evidence to support the Secretary's finding must be based on the record as a whole. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). A reviewing court does not conduct a *de novo* examination of the evidence and it is not free to substitute its finding of fact for those of the Secretary if substantial evidence supports those findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

## I.

The Social Security Act allows insurance benefits for both the legitimate and the illegitimate children of a fully insured deceased wage earner. *See* 42 U.S.C. §§ 402(d)(1), 402(d)(3), 416(e), 416(h). In order to qualify for support, however, a child must have been "dependent" on the wage earner at the time of his death. 42 U.S.C. § 402(d)(1)(C). Legitimate children are deemed dependent under the Act. 42 U.S.C. § 402(d)(3). An illegitimate child will be deemed "legitimate," and thus enjoy the presumption of dependency, if he can show that the deceased insured had made a written acknowledgement of paternity. 42 U.S.C. § 416(h)(3)(C)(i)(I). In the instant case, plaintiff argues that the undated letter allegedly written by Brad Montgomery in which he states, "tell Margaret I will send money for the baby when I get a job," constitutes a written acknowledgement within the meaning of the Act. The Secretary determined that the letter did not meet the requirements for a written acknowledgement of paternity in that it does not identify the child by name nor does it acknowledge that the "baby" referred to is the child of the deceased insured. We note further that this letter was never communicated to the plaintiff nor did the parents even know who "Margaret" was. We agree with the Secretary and hold that the letter was not sufficient to constitute an acknowledgement of paternity under the Act.

## II.

An illegitimate child may also be deemed the child of the deceased insured for purposes of the Act if:

> such insured individual is shown by evidence satisfactory to the Secretary to have been the mother or father of the applicant and was living with or contributing to the support of the applicant at the time such insured individual died.

42 U.S.C. § 416(h)(3)(C)(ii).

In the instant case, the district court has previously held that there was sufficient

evidence to conclude that Christopher O. Chester was the child of Brad Montgomery for purposes of 42 U.S.C. § 416(h)(3)(C)(ii). Plaintiff does not deny that Brad Montgomery never lived with her during or after her pregnancy. Thus, the remaining issue before this court is whether there was substantial evidence to support the conclusion that the deceased wage earner did not contribute to the support of the child.

The Secretary has determined that the contribution of the absent parent must have been "regular and substantial" in order for the child to be eligible for survivor's benefits under the Act. This court, however, has ruled that the support requirement "must be evaluated in light of the father and child's actual circumstances." *See, Childress v. Secretary of HHS,* 679 F.2d 623, 628 (6th Cir.1982) (quoting *Parker v. Schweiker,* 673 F.2d 160 (6th Cir.1982)). *See also, Boyland v. Califano,* 633 F.2d 430 (6th Cir.1980). Thus, the child may be eligible even if the contributions were small, so long as the contributions were significant relative to the contributor's resources and important to the cost of raising the child. In *Boyland,* the statutory requirement was satisfied where the impoverished wage earner made sporadic payments of $5 to $10 to his illegitimate children and gave them gifts, clothing, and lunch money, and allowed them to stay at his home for weeks at a time. 633 F.2d at 434. In *Parker,* the support requirement was met where the wage earner had made regular contributions until he became hos-pitalized a year before his death, and there was evidence that the wage earner would have continued to provide support had he been requested. 673 F.2d at 163–64. In *Childress,* the wage earner's payments of $15.00 to $20.00 per month constituted support under the Act where the impoverished wage earner had to support a wife and a legitimate child. 679 F.2d at 630.

In other cases, however, this court has found that the insured did not contribute to the claimant's support even when measured against the less stringent requirements established by this court. In *Kohut v. Secretary of Health, Education and Welfare,* 664 F.2d 120 (6th Cir.1981), the illegitimate child failed to demonstrate the requisite dependency on his biological father where the father earned virtually no income during the two years before his death, never lived with the child or his mother, but rather lived with his wife and three legitimate children. Moreover, the record revealed that the child's mother actually contributed approximately $20.00 per month to the biological father and the court discounted the uncorroborated claims that the biological father had made contributions to the support of the child. In *Young v. Secretary of Health and Human Services,* 787 F.2d 1064 (6th Cir.1986), this court found that the support requirements were not satisfied where the deceased was neither living with the mother and the child nor contributing any support during the year before his death.[1]

In initially remanding this case to the ALJ, the district court specifically instruct-

---

**1.** After this court first enunciated the flexible standard for measuring the contribution of the deceased parent, the Social Security Administration issued a ruling stating that it did not acquiesce in the *Boyland* decision. Social Security Ruling 81–1c. The Administration issued a regulation which incorporated the "regular and substantial" requirement into the definition of "contributions to support." *See* 20 C.F.R. § 404.366(a)(2). This regulation was not in effect at the time plaintiff applied for benefits; and therefore, it is not controlling. Even if it were to apply, it is unclear as to the effect this regulation would have on our determination. In *Childress,* this court implicitly held that a flexible standard should be used to measure contribution, despite the recent regulation which requires "regular and substantial support." 679 F.2d at 629 n. 9 and accompanying text. Likewise, in *Young,* this court recently stated:

> In sum, the requirements of 42 U.S.C. § 416(h)(3)(C)(ii) and 20 C.F.R. § 404.366(a)(2) may be satisfied in some circumstances "where the resources of the wage earner are scarce and the contributions to children important to them." A determination of the issue focuses upon the father's economic capabilities and the actual dependency of the child on the father's contribution. 787 F.2d 1064–65 (citations omitted).

ed that the plaintiff's claim be reconsidered under the standards established in *Boyland* and *Parker*. After discussing the factual circumstances in each of these cases, the ALJ concluded that the single payment of $30.00 was not sufficient to constitute "support" within the meaning of the statute. The ALJ's decision was affirmed by the Appeals Council and by the magistrate and by the district judge.

Plaintiff argues that the courts below did not give sufficient consideration to Mr. Montgomery's impoverished condition which precluded him from providing assistance. Plaintiff further contends that the court failed to consider that the needs of an unborn child are relatively few and thus, although Mr. Montgomery's contribution was slight, it was commensurate with the child's needs. In support of her contentions, plaintiff cites to recent cases decided in other circuits where courts have found posthumous illegitimate children of deceased wage earners were entitled to benefits where the assistance provided was commensurate with the pre-natal needs of the child. *See, Parsons for Bryant v. Health and Human Services*, 762 F.2d 1188 (4th Cir.1985) (payments totaling $50.00 to provide transportation to visit the doctor were sufficient where father died during fifth month of pregnancy); *Doran v. Schweiker*, 681 F.2d 605 (9th Cir.1982) (assistance in moving the mother and repairing the roof of her new apartment was sufficient); *Adams v. Weinberger*, 521 F.2d 656 (2nd Cir.1975) (furnishing rent free apartment to mother, sporadic cash payments, and $100.00 contribution toward hospital bill deemed sufficient to constitute support).

Two recent opinions from district courts within this circuit have also addressed this issue. In *Morgan v. Schweiker*, 558 F.Supp. 331 (S.D.Ohio 1983), the court held that the child should collect benefits even though the deceased father made no contribution to the mother during the mother's

pregnancy. The *Morgan* court found that the mere announcement by the deceased insured of his intention to marry the mother was sufficient to satisfy the requirements of the Act. *Id.* at 336. Another district court within this circuit has expressly rejected the reasoning of the *Morgan* court, and has held that the mere unfulfilled intention of a deceased wage earner to marry the mother and to provide support for the child was not sufficient to constitute "support" within the meaning of the Act. *Johnson on Behalf of Bryant v. Secretary of Health and Human Services*, 610 F.Supp. 276 (E.D.Mich.1985), *aff'd*, 801 F.2d 797 (6th Cir.1986).

■ To the extent that these cases conflict, we reject the decision in *Morgan*, and adopt the district court's reasoning in *Johnson*. *See Johnson*, 801 F.2d 797. We hold that the absent father must provide at least some nominal contribution to the support of the expectant mother in order for the posthumous illegitimate child to be eligible for survivor's benefits under 42 U.S.C. § 416(h)(3)(C)(ii).

■ The question before this court is whether the single gift of $30 which Brad Montgomery allegedly gave to Margaret Chester approximately two months before the birth of her child constitutes "support" with the meaning of the Act.[2] We hold that there is substantial evidence to support the ALJ's conclusion that the single $30.00 gift did not constitute "support" even in light of Mr. Montgomery's impecunious financial condition and the limited needs of the claimant. It is important to note that in the instant case, the deceased insured did not die until over two months after the birth of his alleged son. Nevertheless, the deceased failed to make any contribution to help defray the hospital costs or the expenses of caring for the baby during the first two months of his infancy. *Cf. Adams v. Weinberger*, 521

2. It is unclear whether the ALJ gave any credence to the evidence of this single payment. The ALJ referred to the uncorroborated testimony of Ms. Chester as "highly questionable." For purposes of this appeal, however, we will accept plaintiff's allegations with respect to the $30.00 gift as being true.

F.2d at 660 ("most telling, however, was the $100 contribution to be used for the hospital bill."). Moreover, Brad Montgomery failed to provide any non-monetary support to the mother or her child. The record reveals that the plaintiff had virtually no contact with the decedent from the time he left for Florida in December of 1976, until his death shortly after his return to Kentucky in April of 1977. During this entire period, the plaintiff allegedly received only a Christmas card and a single telephone call from Mr. Montgomery. Based on these facts, there is substantial evidence in the record to support the conclusion that Mr. Montgomery did not contribute to the support of the claimant, Christopher Chester. Therefore, we hold that the claimant is not entitled to benefits under 42 U.S.C. § 416(h)(3)(C)(ii).

Our decision in the instant case is in accord with the recent decision by this court in *Young v. Secretary of Health and Human Services*, 787 F.2d 1064 (6th Cir. 1986), wherein we noted that the policy behind the Act was to avoid "economic dislocation" caused by the sudden loss of a parent's support. *Id.* at 1070 (citing *Childress*, 679 F.2d at 629). In the instant case, Brad Montgomery failed to provide any significant financial support to the claimant; therefore, the claimant did not incur a sudden economic loss as a result of Brad Montgomery's death. *Cf., Mathews v. Lucas*, 427 U.S. 495, 507, 96 S.Ct. 2755, 2763, 49 L.Ed.2d 651 (1976) (child survivor's benefits "intended just 'to replace the support lost by a child when his father ... dies'") (quoting S.Rep. No. 404, 89th Cong., 1st Sess. 110, *reprinted in* 1965 U.S.Code Cong. & Admin.News, 1943, 2050).

### III.

Under the Act, an illegitimate child is entitled to a presumption of dependency, and hence, survivor's benefits, if the child can show that he qualified as the intestate heir of the deceased insured under the applicable state laws governing the devolution of intestate property. 42 U.S.C. § 416(h)(2)(A) provides in pertinent part:

In determining whether an applicant is the child ... of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property ... if such insured individual is dead, by the courts of the state in which he was domiciled at the time of his death.... Applicants who according to such law would have the same status relative to taking intestate personal property as a child ... shall be deemed such.

### A.

In the instant case, there is no dispute that Brad Montgomery was domiciled in Kentucky at the time of his death; and therefore, this court must look to the intestacy laws of Kentucky to determine whether the claimant was entitled to benefits. There is a dispute, however, as to whether the court should rely on the applicable Kentucky law in effect at the time of the insured's death, or the law in effect at the time the claimant filed for benefits.

At the time of Brad Montgomery's death on April 23, 1977, Ky.Rev.Stat.Ann. § 391.090 provided that an illegitimate child could inherit from his father only if he had been recognized by the father and had been legitimated by the subsequent marriage of his parents. On April 26, 1977, the United States Supreme Court struck down a similar Illinois law because it unconstitutionally discriminated against illegitimate children. *See Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Later that same year, the Supreme Court of Kentucky, relying on the *Trimble* decision, declared the Kentucky statute to be unconstitutional. *Pendleton v. Pendleton*, 560 S.W.2d 538 (Ky.1977). In that decision, the Kentucky Supreme Court specifically stated:

This opinion shall have no retroactive effect upon the devolution of any title occurring before April 26, 1977 (the date of the *Trimble* opinion), except for those

specific instances in which the dispositive constitutional issue raised in this case was then in the process of litigation. *Id.* at 539.

The Secretary argues that the non-retroactivity provision in the *Pendleton* decision means that the Kentucky statute still controls the disposition of plaintiff's claim even though the statute was subsequently declared unconstitutional. The Secretary further argues that because the claimant could not qualify as an intestate heir under the old statute, he is not entitled to survivor's benefits under the Act.

Plaintiff argues that the date of filing for benefits, October 25, 1978, is the controlling date, and not the date of the wage earner's death. The Kentucky legislature has failed to revise the invalid intestacy statute; however, in *Fykes v. Clark*, 635 S.W.2d 316 (Ky.1982), the Kentucky Supreme Court set forth a new standard of proof to determine the inheritance rights of an illegitimate child whose father died intestate. Plaintiff argues that the claimant qualifies for intestate succession under the criteria enunciated in *Fykes*, and therefore, is eligible for benefits under the Act.

The United States Supreme Court has recently addressed the issue of the retroactive applicability of its decision in *Trimble*. In *Reed v. Campbell*, —— U.S. ——, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), the Court held that the *Trimble* decision must be given effect even in cases where the father died prior to the date of the decision, unless it would have an adverse impact on the orderly administration of the decedent's estate. 106 S.Ct. at 2238. In *Reed*, the contested estate was still open at the time the *Trimble* decision was handed down; and therefore, the Court found that there was no reason not to allow the illegitimate child to make her claim on the estate. *Id.*

█ Although the instant case does not involve a direct claim on the decedent's estate, the Act directs us to rely on the intestacy laws to determine claimant's eligibility for benefits. Therefore, we find the Supreme Court's opinion in *Reed* to be controlling in the instant case. The Secretary

has failed to show how the retroactive application of the *Trimble* decision could have an adverse impact on any legitimate state interests that may be involved. There is no reason why the child's claim for benefits cannot be evaluated in light of the principles set forth in the *Trimble* decision which prohibit unconstitutional discrimination against illegitimate children. Therefore, for purposes of this analysis, we will look to the law as established by the Kentucky Supreme Court in *Fykes*, which was decided in accordance with the *Trimble* opinion.

### B.

In *Fykes*, the Kentucky Supreme Court held that an illegitimate child who seeks to inherit from his putative father must establish paternity by "clear and convincing evidence." 635 S.W.2d at 318. The *Fykes* court described the standard of proof:

> Clear and convincing does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people.

*Id.* (citation omitted).

As previously noted, the district court has already determined that the claimant was a child of the insured for purposes of 42 U.S.C. § 416(h)(3)(C)(ii) which requires "evidence to the satisfaction of the Secretary." In a subsequent proceeding, however, the district court found that plaintiff failed to meet her burden of proof under the more stringent evidentiary standard of "clear and convincing evidence" as is required under Kentucky intestacy law.

Plaintiff argues that the factors which led the Kentucky Supreme Court to recognize the paternity claim in *Fykes* are also present in the instant case. Specifically, the *Fykes* court relied on the following facts; (1) the relationship between the decedent and the expectant mother was consistent with their respective roles as mother and father; (2) that the decedent publicly acknowledged his paternity; and (3) that the couple planned to be married the week-

end the decedent died unexpectedly. *Id.* at 318.

In the instant case, the ALJ found that the long period of separation and lack of communication between the plaintiff and Brad Montgomery was not consistent with the decedent's role as the putative father of the claimant. The ALJ also relied on the testimony of Brad Montgomery's father who stated that at the time of Brad's death, Brad was "going with other girls." The ALJ also discounted plaintiff's unsubstantiated claim that she and the decedent had plans to marry. Likewise, the ALJ found that the remarks which the decedent supposedly made to his parents about having fathered a child by "Margaret from Mt. Sterling" insufficient to establish paternity. Margaret never made any effort to contact the parents and they met by accident a year and a half after Brad's death. Finally, the ALJ found that the plaintiff's initial refusal to reveal the identity of the father and her decision to give the baby her own surname inconsistent with the claim of paternity. The ALJ found that the plaintiff's proffered explanation that she wanted to "surprise Brad's parents" was not credible. We also note that plaintiff testified she met Brad in July, and the child was born in February.

Based on our review of the record, we find that the district court correctly concluded that the plaintiff failed to establish the paternity of the claimant by clear and convincing evidence, as is required under Kentucky law. Therefore, we hold that the claimant is not entitled to survivor's benefits under 42 U.S.C. § 416(h)(2)(A).

For the foregoing reasons, the decision of the district court is AFFIRMED.