Edith YOUNGER for Jill YOUNGER and Walter Younger, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant,

and

Vicki Hulet for Drenna Hulet, Intervening Defendant/Claimant.

No. K86–102.

United States District Court, W.D. Michigan.

Aug. 13, 1987.

Horace W. Adams, Paw Paw, Mich., for plaintiff.

John A. Smietanka, U.S. Atty. by Daniel M. Laville, Grand Rapids, Mich., and Sloan, Benefiel, Farrer, Newton & Glista by Gary C. Newton, Kalamazoo, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

On April 7, 1987, Magistrate Doyle Rowland issued a Report and Recommendation proposing that the Court grant plaintiff's motion for summary judgment and deny defendant's and intervening defendant/claimant's motions for summary judgment. Intervening defendant filed her objections to the Magistrate's Report and Recommendation on April 15, 1987. The Court has conducted a *de novo* review of those portions of the Magistrate's Report to which intervening defendant has objected. 28 U.S.C. § 636(b)(1). For the reasons discussed below, the Court will reject the Magistrate's recommendation and will grant defendant and intervening defendant/claimant's motions for summary judgment.

### Summary of Facts and Pertinent Testimony

The procedural and factual history of this case is quite complex, but it has previously been presented in the Administrative Law Judge's decision, as well as in Magistrate Rowland's Report and Recommendation, and the Court sees no need to repeat those histories in detail here. The Court will focus its presentation on those facts which are critical to its legal analysis.

The crucial issues before the Magistrate were whether Mr. Younger is the natural father of intervening defendant/claimant Drenna Hulet, and whether Mr. Younger contributed to Drenna Hulet's support at the time of his death. Plaintiff originally contested both the ALJ's findings and the legal standards applied to determine Drenna Hulet's eligibility for child insurance benefits.

Ms. Hulet testified that her pregnancy was not confirmed until February 1983. Further, Ms. Hulet moved into a house trailer at Mr. Younger's suggestion at the end of March, 1983. Mr. Younger paid both a $100 deposit and $100 for the first month's rent. Ms. Hulet also testified that Mr. Younger visited her every night after work and stayed there every weekend and at least one night during the week. The ALJ credited this testimony and disregarded Ms. Hulet's written statements to the Social Security Administration that Mr. Younger did not contribute to the costs of obtaining and maintaining her trailer. (Tr. 128, 126). Although Mr. Younger contributed $20 for food on the weekends, the ALJ considered that outlay as a sharing of weekend expenses rather than as a "support payment."

Some five or perhaps six weeks later, on May 9, 1983, Mr. Younger suffered a stroke. The ALJ found that prior to May 9, 1983, the cost of Ms. Hulet's two visits to an obstetric clinic were covered either by Blue Cross/Blue Shield or Medicaid. Ms. Hulet also paid the $4 for the pregnancy testing and her minimal transportation costs.

*Analysis*

The Court finds it significant that the ALJ focused upon the short period of time from when Mr. Younger learned of Ms. Hulet's testimony that the deceased wage earner tried to provide sufficient shelter

for the mother and unborn child in arriving at his conclusion that the $200 support was adequate when measured against Mr. Younger's income. Here the ALJ also recognized that this amount of support was commensurate with the needs of the unborn child especially in light of the fact that Mr. Younger was maintaining another household at the time (Tr. 25).

The Magistrate found that the Secretary's determination that Mr. Younger is the natural father of Drenna Hulet is supported by substantial evidence. Intervening defendant/claimant does not object to that portion of the Magistrate's Report, and the Court agrees with the Magistrate's finding. However, the Magistrate also found that the ALJ's determination that Drenna Hulet is a "posthumous child" as well as his application of the corresponding support standard for posthumous children to be not supported by substantial evidence.

Intervening defendant/claimant argues that the Magistrate should have considered Drenna Hulet a "posthumous child" in light of the policy reasons underlying the different standard of support the courts have applied when posthumous children are involved. Defendant argues that courts have adopted a modified standard when posthumous children are involved not merely because such children are born after the wage earner died, but rather because the wage earner is, in effect, "unable" to provide "normal support" to a child who is not yet born.

Here, defendant argues that Anthony Younger was unable to provide any support to Drenna Hulet because of his stroke. Defendant argues that the effect of his stroke on his ability to support Drenna Hulet is no different than if he had actually died on May 9, 1983. *See* Intervening Defendant's Brief in Support of Objections at 2.

The Magistrate indicates that the Sixth Circuit has set forth flexible standards for determining the issue of support in the case of children born out of wedlock. *See Childress v. Secretary of Health and Human Services*, 679 F.2d 623, 628 (6th Cir.

1982) (indicating the proper standard is that of continuously regular and substantial contributions when the income of the wage earner is regular and substantial). The Magistrate further notes that where such income is not regular and substantial, the Sixth Circuit has also reasoned that the "support requirement must be 'evaluated in light of the father and the child's actual circumstances.'" *Childress*, 679 F.2d at 628.

While the Magistrate has essentially indicated that the Sixth Circuit has set up a flexible "proportionality standard" in determining support, the Magistrate found that the ALJ should have applied the standard established by the Sixth Circuit for determining support for illegitimate children born before the father's death because Drenna Hulet, born some three weeks prior to Anthony Younger's death, was not, by "definition," a posthumous child. Here, the Magistrate rejected the ALJ's decision to treat Drenna Hulet as a posthumous child, or, put differently, as the functional equivalent of a "posthumous child." Although Mr. Younger survived Drenna Hulet by twenty-one (21) days, the ALJ found that it would have been impossible for Mr. Younger to have lived with her or contributed to her support after the onset of his first stroke on May 9, 1983. In reaching his decision, the ALJ relied in part on Dr. Ekkens' report that Mr. Younger could not communicate in any way. (Tr. 23).

The Magistrate noted that the Sixth Circuit has not set forth a standard for posthumous children, but indicated that it did seem to require at lest some nominal contribution in order for a posthumous child born out of wedlock to be eligible for benefits. *Chester v. Secretary of Health and Human Services*, 808 F.2d 473, 475 (6th Cir.1987). The Magistrate went on to reject plaintiff's reliance on a line of cases from the Second, Fourth and Ninth Circuits that all indicate that the appropriate standard to be applied in the context of posthumous children is whether the contributions, no matter how small, are commensurate with the unborn child's needs. *See e.g., Adams v. Weinberger*, 521 F.2d 656 (2d Cir.1975); *Parsons for Bryant v.*

*Health and Human Services,* 762 F.2d 1188 (4th Cir.1985); *Doran v. Schweiker,* 681 F.2d 605 (9th Cir.1982).

While it is technically true that Mr. Younger did not make any other contribution other than the $200 which was used as a deposit and rent for Ms. Hulet's trailer, the Court is not persuaded by the Magistrate's conclusion that under the facts of this case the appropriate standard to apply is that set forth in *Chester, supra.* In *Chester,* the Sixth Circuit found substantial evidence to uphold the ALJ's conclusion that a single $30 gift given by the father to the mother two months prior to the child's birth did not constitute support even in light of the father's impoverished condition and the limited needs of the child before it was born. *Chester,* 808 F.2d at 477.

The Magistrate found the situation of Mr. Younger and Drenna Hulet "very similar to that in *Chester"* and contrasted the impoverished status of the natural father in *Chester* with Mr. Younger's regular income in concluding that his single contribution with respect to the trailer was insufficient to constitute support of Drenna Hulet where he failed to contribute any other support or to make any provisions for the child. *See Magistrate's Report and Recommendation* at 14–15.

The Court believes that this case presents a very close case and one of first impression, or perhaps, quite possibly, a unique case. Other courts have noted that, in general, "in the case of a posthumous child a finding of support presents difficulties obviously not present *when the father survives some time past the birth of the child,"* *Mendoza v. Secretary of Health and Human Services,* 655 F.2d 10, 14 (1st Cir.1981) (emphasis added).

Here the Court is presented with the additional difficulty of whether to apply the standards for "posthumous children" or "living children" in trying to determine whether the statutory requirement of support pursuant to 42 U.S.C. § 416(h)(3)(C)(ii) of the Act has been met. The ALJ opted to apply the standard for "posthumous children" while the Magistrate adopted the standard for "living children." While the Court believes neither standard is entirely adequate, it recognizes those are the limited alternatives.

■ The Court emphasizes that the Social Security Act is remedial and its humanitarian aims necessitates that it be construed broadly and applied liberally. *See e.g., Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 41 (2d Cir.1972). The Court believes that the ALJ's expansive interpretation of "posthumous child," especially where there is no Sixth Circuit case law interpreting "posthumous child," is analogous to a court's determination that an "illegitimate child of a deceased father, conceived before, but born after, the father's death, is sufficiently "in being" to be capable of "living with" the father at the time of his death. *See e.g., Wagner v. Finch,* 413 F.2d 267 (5th Cir.1969) (adopting a "social security ruling" in the absence of case law interpreting the "living with" provisions of the statute). In the latter case, the *Wagner* court concluded that a "child" not yet born is nevertheless capable of living with the father at the time of his death. In this case, the ALJ concluded that a child born before the actual death of his father could be considered "posthumous," where the father was in effect "dead," or stated differently, where the father was not capable of living with, supporting, or even indicating his intent to support the child prior to the child's birth (except for a brief period between the end of February or March and the first week of May), or for the three weeks in which Mr. Younger was still "alive" after the child's birth.

■ The Court believes that under the special circumstances of this case, the fact that a worker is pronounced legally dead only a few weeks *after* the birth of an illegitimate child, is no legal or equitable reason to prohibit that child from receiving benefits under the Act where the application of the "posthumous child" standard indicates that the support requirements have been met, but the application of the "living child" standard arguably indicates that the child should not receive benefits

because the support requirements have not been met.

Further, the Court believes that the fact that Mr. Younger survived the birth of Drenna Hulet by twenty-one (21) days makes the standards used to measure support in cases involving living children inappropriate. Here, Mr. Younger's state of physical paralysis made it impossible for him to either live with or to contribute to the support of the unborn child within the meaning of § 416(h)(3)(C)(ii).

The Magistrate found that as a living child, Drenna Hulet did not qualify under the "support" test because the support given by Mr. Younger was not "regular and continuous." The Court notes that under the facts of this case, the quite limited time period—from five to perhaps ten weeks—in which Mr. Younger was able to physically and mentally function makes the living child standard only marginally useful even assuming, *arguendo*, that Drenna Hulet is not a "posthumous child." The Court emphasizes that the rather brief period of time between Mr. Younger's awareness that Ms. Hulet was pregnant and the onset of his stroke, makes it difficult to justify— as a matter of logic and of law—the application of a standard which takes as its indicia of adequate "support," the paying of contributions which are "continuously regular and substantial," when the wage earner's income is, as Mr. Younger's arguably is, regular and substantial.

 Moreover, the purpose of the sections of the Act involved here is to provide support to children who have lost either the actual support of an insured parent or the anticipated support which that parent would have been expected to provide had his death not intervened. *See Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500–01, 41 L.Ed.2d 363 (1974). The terms of the Act which require that a potential claimant show dependency should not be construed so as to withhold benefits in marginal cases. *See e.g., Herbst v. Finch*, 473 F.2d 771, 775 (2d Cir.1972).

It is true that Congress has indicated its intent that the Secretary filter out and reject so-called "spurious claims," that is, those claims that are made by claimants who are in reality not children of the wage earner, as well as those claims made by claimants who have no financial interest in their fathers' death but for the possible windfall benefits which they would receive under the Act. *See Adams v. Weinberger*, 521 F.2d at 659–660. However, the Court believes that intervening defendant/claimant Drenna Hulet's claim does not fall within either class of "spurious claims." The Court further concludes that the ALJ's reliance on *Parsons for Bryant v. Health and Human Services, supra,* a posthumous child case in which the wage earner died while his girlfriend was some five months pregnant, was justified. The *Parsons* court found a total contribution of $50 for transportation to the doctor's office sufficient "support" under the "federal test" requirements. In this case, the ALJ concluded that while Mr. Younger did not contribute toward the minimal cost of transportation to the doctor, Mr. Younger did go to considerable expense to arrange for a new place for the mother to live after he discovered that Ms. Hulet was pregnant. The ALJ also found that Mr. Younger arranged for the payment of rent for the trailer for the express purpose of providing more room for her and the child (Tr. at 25).

Accordingly, the Court finds that the ALJ properly concluded that Mr. Younger contributed to the support of Drenna Hulet and that she is his "child" within the meaning of the Act. Further, the Court finds that the Secretary's decision awarding insurance benefits to Drenna F. Hulet pursuant to the application filed on Drenna's behalf on November 8, 1983 is supported by substantial evidence. The Court will enter an order denying plaintiff's motion for summary judgment, granting intervening defendant/claimant's motion for summary judgment, and indicating that the Secretary's decision granting benefits to Drenna Hulet be affirmed.