Mary WHITLOCK, mother and next
friend of Ronald E. Branch, an in-
fant, SSN: 223 84 2896, Plaintiff,

v.

Shirley S. CHATER, Commissioner
of Social Security, Defendant.

Civil Action No. 96–0665–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 12, 1997.

Gary C. Hancock, Gilmer, Sadler, Ingram, Sutherland & Hutton, Pulaski, VA, for Plaintiff.

Julie Campbell, Asst. U.S. Atty., Roanoke, VA, for Defendant.

### MEMORANDUM OPINION

CONRAD, United States Magistrate Judge.

Mary Whitlock has filed this action on behalf of her son, Ronald E. Branch, challenging the final decision of the Commissioner of Social Security denying a claim filed on behalf of Ronald E. Branch for child's insurance benefits under the Social Security Act, as amended, 42 U.S.C. § 402(d). Plaintiff also seeks review of the refusal of the Social Security Administration to re-open earlier claims for child's insurance benefits under the provisions of 20 C.F.R. §§ 404.987 – 404.989. jurisdiction of this court is asserted pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

As reflected by the memoranda and argument submitted by the parties, the issues now before this court are whether the Commissioner's final decision denying the most recent claim for child's insurance benefits is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. *Richardson v. Perales,* 402 U.S. 389, 400, 91 S.Ct. 1420, 1426–27, 28 L.Ed.2d 842 (1971). The court must also decide whether it has jurisdiction to consider plaintiff's claim that the Commissioner erred in refusing to reopen the earlier applications for child's insurance benefits.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mary Whitlock is the mother of Ronald E. Branch. Ronald was born on February 5, 1978. It is undisputed that Curtis E. Allen was the father of Ronald E. Branch. Mary Whitlock and Curtis E. Allen were never married. Curtis E. Allen died on August 7, 1977. It is undisputed that at the time of his death, Curtis E. Allen was fully insured for social security purposes, as provided under 42 U.S.C. § 414(a) and as referenced under 42 U.S.C. § 402(d)(1). On March 22, 1994, Mrs. Whitlock filed an application for child's insurance benefits on behalf of Ronald. The claim was filed on the wage earner's account of Curtis E. Allen. The record before the court indicates that Mrs. Whitlock had previously filed a number of other claims on behalf of Ronald for child's insurance benefits. There is some uncertainty in the record as to both the number and the dates of these earlier applications. Mrs. Whitlock testified at the administrative hearing in the instant case, however, that no administrative hearings had been conducted in connection with any of the earlier applications for benefits. (TR 34).

Mrs. Whitlock's most recent application was denied upon initial consideration and reconsideration. She then requested and received a *de novo* hearing and review before an Administrative Law Judge. In an opinion dated June 12, 1995, the Law Judge also denied the application for child's insurance benefits. Stated succinctly, the Law Judge found that Ronald E. Branch was not dependent upon Curtis E. Allen at the time of his father's death. As will be discussed in more detail below, "dependency" upon the wage earner is one of the requirements for entitlement to child's insurance benefits. Inasmuch as the Law Judge held that Ronald E.

Branch was not dependent upon his father at the time of his father's death, it necessarily follows that the Law judge concluded that Ronald was never entitled to child's insurance benefits on the wage earner's account of Curtis E. Allen at any point in time. Thus, the Law Judge did not directly address the issue of reopening the earlier applications. However, as regards the matter of issue preclusion in general, the Law Judge commented as follows:

> The claimant testified that she had filed previous applications for child's insurance benefits and the Social Security computer record indicates a previous filing in July 1982. Efforts were made to obtain this record but were unsuccessful. Therefore, the issue of *res adjudicata* is not considered in this decision. (TR 15).

The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Whitlock has now appealed to this court.

### STATEMENT OF THE APPLICABLE STATUTORY PROVISIONS

Under 42 U.S.C. § 402(d)(1), entitlement to child's insurance benefits is conditioned as follows:

> Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—
>
> (A) has filed application for child's insurance benefits;
>
> (B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22, and
>
> (C) was dependent upon such individual—
>
> . . .
>
> (ii) if such individual has died, at the time of such death.
>
> . . .

shall be entitled to child's insurance benefits . . . .

Thus, one of the primary conditions for entitlement is that the child be dependent upon the individual on whose wage earner's account the application is made. For the purpose of determining dependency, 42 U.S.C. § 402(d)(3) provides as follows:

> A child shall be deemed dependent upon his father or adopting father or his mother or adopting mother at the time specified in paragraph (1)(D) of this subsection unless, at such time, such individual was not living with or contributing to the support of such child and—
>
> (A) such child is neither the legitimate nor adopted child of such individual, or
>
> (B) such child has been adopted by some other individual.
>
> For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual.

Therefore, it is necessary that Ronald E. Branch be deemed to be a legitimate child of Curtis E. Allen in order for Ronald to meet the dependency requirement for child's insurance benefits.

As referenced under 42 U.S.C. § 402(d)(3), 42 U.S.C. § 416(h)(3) provides, in pertinent part, as follows:

> An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:
>
> . . .
>
> (C) in the case of a deceased individual—
>
> (i) such insured individual—
>
> (I) had acknowledged in writing that the applicant is his or her son or daughter,
>
> (II) had been decreed by a court to be the mother or father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter,

and such acknowledgement, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the [Commissioner] to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

It is undisputed that the provisions of 42 U.S.C. § 416(h)(2)(B) do not apply in this case. However, in *Mathews v. Lucas,* 427 U.S. 495, 499 at n. 2, 96 S.Ct. 2755, 2759 at n. 2, 49 L.Ed.2d 651 (1976), the Supreme Court recognized that an applicant who meets the definition of "child" under 42 U.S.C. § 416(h)(2)(A) also qualifies for the presumption of dependency. *See, also, King v. Califano,* 484 F.Supp. 861 (M.D.La.1980). Under 42 U.S.C. § 416(h)(2)(A), it is provided as follows:

In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the [Commissioner] shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such.

### RESOLUTION OF DEPENDENCY ISSUES

In appealing the Commissioner's final decision to this court, plaintiff contends that Ronald E. Branch can be presumed to be the legitimate child of Curtis E. Allen, and can therefore be presumed to have been dependent upon Curtis E. Allen at the time of the wage earner's death, under both the provisions of § 416(h)(2)(A) and those of § 416(h)(3)(C)(ii). After a review of the record, the court finds substantial evidence to support the conclusion that Ronald E. Branch cannot be deemed to be the child of Curtis E. Allen under the provisions of 42 U.S.C. § 416(h)(2)(A). However, based upon the standards established by the United States Court of Appeals for the Fourth Circuit, and given the undisputed evidence as to the relationship between Mary Whitlock, Curtis E. Allen, and Ronald E. Branch, as well as the evidence regarding the support provided by Curtis E. Allen, the court finds that the record does not support the determination that Ronald cannot be deemed to be the child of Curtis E. Allen under 42 U.S.C. § 416(h)(3)(C)(ii).

### I.

Plaintiff's argument under § 416(h)(2)(A) is premised upon the provisions of Va.Code Ann. § 64.1–8.1, which states as follows:

Relatives of the decedent conceived before his death but born thereafter, and children resulting from assisted conception born after decedent's death who are determined to be relatives of the decedent as provided in Chapter 9 (§ 20–156 et seq.) of Title 20, shall inherit as if they had been born during the lifetime of the decedent.

Plaintiff argues that, inasmuch as the Law Judge found that Ronald is the child of Curtis E. Allen, Ronald would therefore be a legal heir of Curtis E. Allen pursuant to the operation of this state statute. However, the court notes that this state statutory provision clearly assumes that the familial relationship has already been established in a manner consistent with other provisions of state law.

Virginia Code Ann. § 64.1–5.2 establishes the means by which the paternity of a child may be established. The statute provides as follows:

For the purposes of this title, evidence that a man is the father of a child born out of wedlock shall be clear and convincing and

may include, but shall not be limited to, the following:

1. That he cohabited openly with the mother during all of the ten months immediately prior to the time the child was born;

2. That he gave consent to a physician or other person, not including the mother, charged with the responsibility for securing information for the preparation of a birth record that his name be used as the father of the child upon the birth records of the child;

3. That he allowed by a general course of conduct the common use of his surname by the child;

4. That he claimed the child as his child on any statement, tax return or other document filed and signed by him with any local, state or federal government or any agency thereof;

5. That the admitted before any court having jurisdiction to try and dispose of the same that he is the father of the child;

6. That he voluntarily admitted paternity in writing, under oath;

7. The results of medically reliable genetic blood grouping tests weighted with all the evidence; or

8. Medical or anthropological evidence relating to the alleged parentage of the child based on tests performed by experts.

■ Based on the record before the court, there is no evidence which indicates that the paternity of Ronald E. Branch may be established under any of the methods or procedures provided Virginia State law.[1] It follows that Ronald is not an heir of Curtis E. Allen for purposes of devolution of intestate personal property. Therefore, Ronald cannot avail himself of the provisions of § 416(h)(2)(A).

## II.

On the other hand, the court finds that the evidence does not support the Commissioner's determination that Ronald cannot be deemed to be the child of the wage earner under the provisions of § 416(h)(3)(C)(ii). Under this subsection, it is necessary that the claimant produce evidence satisfactory to the Commissioner to demonstrate that Curtis E. Allen was the father of Ronald, and that Curtis E. Allen was living with or contributing to the support of Ronald at the time of the wage earner's death. Curtis E. Allen died before Ronald was born. Thus, Ronald never lived with his father. The only remaining issue is whether Curtis E. Allen was contributing to the support of Ronald at the time of the wage earner's death.

Most of the evidence in this case consists of testimony from Mary Whitlock given at the administrative hearing on May 19, 1995. Mrs. Whitlock's testimony indicates that she was seventeen years of age when she became pregnant by Curtis E. Allen. (TR 37). At the time of her relationship with Curtis E. Allen, Mrs. Whitlock lived with her family and Mr. Allen lived with his parents. (TR 29). Mrs. Whitlock's family lived about a block away from the Allen family. (Tr 29). Mrs. Whitlock was still a student when she became pregnant. (TR 38).

Mrs. Whitlock learned that she was pregnant only a few weeks before Curtis E. Allen's death in August of 1977. However, she and Mr. Allen discussed the child shortly before the accident in which he drowned. According to Mrs. Whitlock, Mr. Allen acknowledged that he was the father of her unborn child. He indicated that "if it was a boy he wanted it, if it was a girl he didn't." (TR 30). Mrs. Whitlock related that Mr. Allen told his mother about the child before he died. Mrs. Whitlock stated that Mr. Allen's mother and the Allen family have always acknowledged Ronald to be the son of Mr. Allen. (TR 31). Although the Allen family wanted to adopt Ronald, Mrs. Whit-

---

1. In the cases cited by plaintiff in support of the claim under § 416(h)(2)(A), it is clear that the paternity of the child in question could have been established in a manner consistent with state law. *See, e.g., Handley v. Schweiker,* 697 F.2d 999 (11th Cir.1983). Because of what was found to be an unconstitutional impediment in the state statutory scheme, however, the claimant could not initiate the appropriate state proceeding. In the instant case, plaintiff is unable to satisfy any of the authentication requirements of the Virginia statute.

lock raised the child herself. (TR 31). Nevertheless, Ronald spends considerable time with the Aliens. (TR 31). Ronald's grandmother often gives Ronald money and gifts. (TR 31).

Mrs. Whitlock's testimony also gives some insight as to the support issue. Mrs. Whitlock's father died when she was six. (TR 39). She is one of nine children. (TR 36). Her family's income consisted primarily of social security benefits based on her deceased father's wage earner's account. (TR 36).

While Mrs. Whitlock relied primarily on her family for her basic human needs, she related that Mr. Allen supplemented her support as proved necessary. The transcript of the administrative hearing reveals the following exchange between Mrs. Whitlock and her attorney:

> Q [Atty] And did you and he share expenses during that period of time? Did he provide support to you in a variety of different ways?
>
> A [Whitlock] Well, we was always together. He bought my food. See, we was on Social Security too, my father died when I was six, so we didn't have much. So we was always together. We took his mom to Roanoke to meet her boyfriend, and he was always buying my food. We stayed in motel rooms together. So everything I got he bought. (TR 30).

Mrs. Whitlock also testified that Curtis E. Allen continued to give her money, buy her food, and take care of her after she told him she was pregnant. (TR 33). While Mrs. Whitlock had not incurred any need for medical care prior to the wage earner's death, she indicated that Mr. Allen had promised to take care of these medical expenses, and to support her child, when she told him that she was pregnant. (TR 33–34). Mrs. Whitlock indicated that in her opinion, Mr. Allen's family has made good on that promise. (TR 34). Mrs. Whitlock testified to the effect that, because there were so many children in her family, the need for outside support was greater than might have otherwise been the case. (TR 36). She related that to the extent that she had needs which were beyond her family's capacity, Mr. Allen took care of those needs. (TR 36–37). While he did not give her money on a regular basis, he bought her food and other things. (TR 37). Mrs. Whitlock and Mr. Allen were together every day. (TR 37).

The only other evidence of record concerning the relationship between Mrs. Whitlock and Curtis E. Allen consists of a statement given by Mr. Allen's mother during a telephone conversation with a Social Security Administration employee. (TR 56). Mrs. Allen stated that her son had been dating Mrs. Whitlock for some time prior to his death. Mrs. Allen related that Mrs. Whitlock was frequently in the Allen home during this period. She indicated that her son and Mrs. Whitlock had told her about the pregnancy prior to his death in a drowning accident. Mrs. Allen confirmed that she has always considered Ronald to be her son's child and her grandchild. Mrs. Allen was uncertain as to whether Curtis ever paid for any of Mrs. Whitlock's living expenses.

The Administrative Law Judge found insufficient evidence to support Mrs. Whitlock's allegation that Curtis E. Allen provided her financial support prior to his death. The Law Judge commented as follows:

> The Administrative Law Judge must conclude that it is not credible that Mary Whitlock required monetary help from Curtis Allen for ordinary and necessary living expenses of food and customary maintenance. She lived with her mother and had no rent to pay, and she received child's benefits under Social Security. She had no medical expenses prior to the death of Curtis Allen as she did not see a doctor until after he died. (TR 14).

 It is now well settled, at least in the Fourth Circuit, that in the case of posthumous illegitimate children, it is not necessary that an applicant for child's insurance benefits establish that the father's contributions to the support of the child were made with the same regularity and substantiality as is generally required in such circumstances. See 20 C.F.R. § 404.366(a)(2). In *Parsons for Bryant v. Health and Human Services*, 762 F.2d 1188 (4th Cir.1985), the United States Court of Appeals for the Fourth Circuit ruled that in the case of a

posthumous illegitimate child, it is necessary to determine whether the support provided by the father was commensurate with the needs of the unborn child at the time of father's death.[2] *See, also, Wolfe v. Sullivan,* 988 F.2d 1025 (10th Cir.1993); *Doran v. Schweiker,* 681 F.2d 605 (9th Cir.1982); *Adams v. Weinberger,* 521 F.2d 656 (2nd Cir.1975). Under this test, support may be documented by showing that contributions such as food, shelter, or medical care were made to the mother. *Wolfe v. Sullivan,* 988 F.2d at 1028. Thus, it is clear that in the case of posthumous illegitimate children, contributions towards support of the mother can be considered to be support for the unborn child. This rule would appear to be especially cogent in a case such as this in which the father died very early during the mother's pregnancy. Furthermore, in assessing the adequacy of the contributions, it is necessary to consider the extent of the child's needs, as well as those of the mother, at the time of the father's death. *Parsons for Bryant v. Health and Human Services,* 762 F.2d at 1190–91.

In the instant case, it is undisputed that Curtis E. Allen was the father of Ronald E. Branch. Based on Mrs. Whitlock's testimony, it is undisputed that Curtis E. Allen provided financial contributions and other forms of support to Mrs. Whitlock, both before and after he knew that she was pregnant with his child. Mrs. Whitlock also indicated that Mr. Allen had promised to provide continuous support for her and her child. While the Administrative Law Judge indicated that there was nothing to support the credibility of Mrs. Whitlock's testimony, the court notes that the statement from Mr. Allen's mother indicates that Curtis E. Allen and Mrs. Whitlock continued to date during the period after she became pregnant. Indeed, the deceased wage earner's mother stated that both her son and Mrs. Whitlock told her about the pregnancy. The court believes that this statement tends to support Mrs. Whitlock's testimony that Curtis E. Allen had determined to take responsibility, both moral and financial, for the child. *See Hyleman for Hyleman v. Heckler,* 719

F.Supp. 437 (W.D.N.C.1985); *Morgan v. Schweiker,* 558 F.Supp. 331 (S.D.Ohio 1983) (intent to support can be inferred from deceased father's attitude and response to pregnancy).

■ The court agrees with the Administrative Law Judge's observation that the extent of Mr. Allen's contributions was not overly great. However, the court believes that Ronald should not be penalized simply because his father died prior to the time his mother began to experience substantial prenatal needs. Mrs. Whitlock was still living at home when she became pregnant. While it was necessary that she share her family's meager financial resources with a number of siblings, she did receive her basic support through her family. The testimony suggests that Mr. Allen supplemented this support. He provided Mrs. Whitlock with assistance in terms of food, money, and other resources which indirectly contributed to the well being of their child. In terms of the analysis required by the Fourth Circuit in *Parsons for Bryant v. Health and Human Services, supra,* the court finds that the measure of support provided by the wage earner was commensurate with the need that was present. Stated differently, it appears that Mrs. Whitlock was receiving the support necessary, with Mr. Allen's help, to satisfy the needs of her unborn child at the time of Mr. Allen's death. The court concludes that plaintiff has met the burden in establishing that Curtis E. Allen was contributing to the support of Ronald E. Branch at the time of wage earner's death, within the meaning of 42 U.S.C. 416(h)(3)(C)(ii). It follows that Ronald E. Branch must be deemed to have been dependent upon his father, Curtis E. Allen, at the time of his father's death. Accordingly, the court concludes that plaintiff has met the burden in establishing that Ronald E. Branch is entitled to child's insurance benefits pursuant to the provisions of 42 U.S.C. § 402(d).

In passing, the court notes that a determination of entitlement to child's insurance benefits in this case does not undercut the

---

**2.** The Commissioner of Social Security has acquiesced to the decision of the Court of Appeals

by way of Acquiescence Ruling 86–22(4) (July 31, 1986).

policy considerations which undergird the "deemed dependency" provisions of the statute. As the court sees it, the statutory scheme attempts to serve two objectives. The first objective is to guard against applications for child's insurance benefits based on spurious claims of paternity. *See Adams v. Weinberger,* 521 F.2d at 658. In the instant case, it is undisputed that Ronald E. Branch is the son of the deceased wage earner. There is no evidence which suggests to the contrary. Indeed, the Administrative Law Judge specifically found that paternity was not an issue in this case. The second statutory objective is to insure that child's insurance benefits will only be used to replace the support the child would have received but for the disability or death of an insured wage earner. *See Mathews v. Lucas,* 427 U.S. at 509–10, 96 S.Ct. at 2764–65. In the instant case, all the evidence suggests that if he had lived, Curtis E. Allen would have supported his child, Ronald E. Branch. Mrs. Whitlock's testimony to this effect is supported by the statement from the deceased wage earner's mother. Based on the decedent's open admission of paternity, and given his attitude toward Mrs. Whitlock and his reaction to the news of her pregnancy, there is every reason to believe that Mr. Allen would have supported the child. More to the point, there is no evidence upon which to find that he would have not. Based on the finding that Mr. Allen was providing support to Mrs. Whitlock, and her unborn child, which was commensurate with their needs at the time of his death, the court concludes that plaintiff has met the burden of proof as prescribed by and pursuant to the Act.

### THE MOTION TO REOPEN EARLIER APPLICATIONS

Plaintiff contends that the Commissioner of Social Security erred in refusing to reopen earlier applications for child's insurance benefits filed on behalf of Ronald E. Branch. *Citing Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Commissioner maintains that the court is without subject matter jurisdiction to review the administrative refusal to reopen the earlier applications. Furthermore, the Commissioner argues that the current application was filed more than four years after denial of the last prior application. The Commissioner contends that in these circumstances, the earlier applications could not have been reopened, even if the Law Judge had been so inclined. *See* 20 C.F.R. § 404.988(b).

In *Sanders,* the Supreme Court held that neither the Administrative Procedure Act nor 42 U.S.C. § 405(g) confers subject matter jurisdiction on federal courts to review the Commissioner's refusal to reopen a prior determination. However, the United States Court of Appeals for the Fourth Circuit has ruled that, under the *Sanders* principle, jurisdiction exists when, even though the Commissioner has purported to rest denial of reopening on principles of administrative finality, a review of the record discloses that the merits of the earlier claim actually have been considered. *See McGowen v. Harris,* 666 F.2d 60, 65–66 (4th Cir.1981). Plaintiff maintains that the exceptional circumstances of *McGowen* exist in the present case.

Without going into any great detail, the court notes that the procedural history in the instant matter would appear to suggest that the case falls under the rationale of *McGowen.* By necessity, in considering the current claim on the merits, the Administrative Law Judge considered essentially the same facts and issues as were involved in the consideration of the earlier applications for benefits filed on behalf of Ronald E. Branch. Indeed, inasmuch as the Social Security Administration was unable to locate the earlier applications for benefits, the Administrative Law Judge in the instant case specifically stated that he would not consider the doctrine of administrative *res judicata* in adjudicating plaintiff's most recent application for benefits. (TR 15). Thus, it is clear that in considering the most recent application, the Administrative Law Judge addressed the merits of the earlier claims. To this extent, the court agrees with plaintiff's argument that *McGowen* applies to the instant case. However, even assuming that the *McGowen* exception operates so as to authorize this court to look behind the Commissioner's refusal to reopen, the court must nevertheless conclude that plaintiff is not entitled to relief

from the Commissioner's ruling that the earlier applications cannot be reopened.

Except in very unusual circumstances not present in the instant case, 20 C.F.R. § 404.988 provides that an earlier decision may be reopened within a period of *four years* upon a showing of good cause. *McGowen* involved a "discretionary reopening" of this nature. The fact that the request to reopen had been made within the appropriate time limit was crucial to the ruling in *McGowen.* 666 F.2d at 65. Several years after *McGowen,* the Fourth Circuit ruled that an application could not be "constructively reopened" based on a request to reopen filed more than four years after the earlier decision. *Robinson v. Heckler,* 783 F.2d 1144, 1146 (4th Cir.1986), *cert. denied,* 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 982 (1986). In *Robinson,* the Fourth Circuit explicitly held that the rationale in *McGowen* does not extend to requests to reopen which are filed beyond the four year limitation of 20 C.F.R. § 404.988(b). 783 F.2d at 1146.

In the instant case, there is some uncertainty as to when Mrs. Whitlock filed the earlier applications on behalf of Ronald for child's insurance benefits. However, she opined that the first application was filed in about 1978. (TR 35). She estimated that the next application was filed a year or two after the first. (TR 36). There is absolutely no evidence or argument which suggests that Mrs. Whitlock has filed the new application, and the request to reopen the earlier applications, within the four year period following the denial of an earlier application. Thus, the court must conclude that the rationale of *McGowen* does not apply to the instant case. *Robinson v. Heckler, supra.* Inasmuch as the Commissioner has properly concluded that plaintiff failed to file a timely request to reopen the earlier applications, plaintiff's request for review of the Commissioner's refusal to reopen shall be denied.

### CONCLUSION

For the reasons stated, the court must deny plaintiff's request for review of the Commissioner's decision not to reopen the earlier applications for child's insurance benefits filed on behalf of Ronald E. Branch. However, as to the most recent application for child's insurance benefits filed on behalf of Ronald E. Branch, the court concludes that the Commissioner's final decision denying benefits is not supported by substantial evidence. Defendant's motion for summary judgment must be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act, judgment will be entered in favor of the plaintiff. The final decision of the Commissioner will be reversed and the case remanded for the establishment of proper benefits. An appropriate judgement and order will be entered this day.

The Clerk is directed to send certified copies of this Opinion to all counsel of record.